$3 million, for which he is entitled to renumeration, with
interest, costs, and any applicable penalties;

(f)   Reasonable legal fees and costs incurred
or to be incurred in this proceeding, per   42 U.S.C. § 1988.

(g)   Punitive damages;

(h)   Other damages as shall be established in
the trial of this matter.


**WHEREFORE,** Plaintiff demands that judgment be entered
in his behalf and against the Defendants, jointly and severally,
for compensatory and punitive damages, and for costs, interest,
and reasonable legal fees, in amounts to be determined upon
trial of this matter.


**COUNT THREE:**

**PROFESSIONAL MALPRACTICE - NEGLIGENCE**
**BREACH OF PROFESSIONAL RESPONSIBILITY**
**BREACH OF FIDUCIARY DUTIES**
**Gabayzadeh v. All Defendants**

168.   Plaintiff incorporates here by reference all of
the previous paragraphs as though fully set forth here at length.

169.   The Defendants committed professional malpratice,
jointly and severally, against Gabayzadeh in that their actions
and omissions fell below the minimum required standards of
professional and fiduciary care each owed to him under the

-40-

circumstances.

170.   The Defendants negligently and recklessly fell
below the minimum standard of care required under the circumstances,
and violated their professional, ethical, and fiduciary duties
to Gabayzadeh, including in, but not limited to, the following
respects:

(1)   Failing to inform him of the Government's plea
      offers and/or requests for negotiations and/or for
      cooperation, as described above and incorporated
      herein; See DR 7-101(A)(1), DR 7-102(3) and (5),
      EC 7-7, and EC 7-8;

(2)   Failing to advise him fully regarding certain courses
      of action or strategy, and/or failing to allow
      him to make the decisions on whether to adopt
      certain important courses of action; See DR 6-101
      (A)(3), EC 7-7 and EC 7-8;

(3)   Concealing from, or failing to disclose to him,
      those matters that they had a duty to reveal, as
      described above and incorporated herein; See DR
      7-102(3), EC 7-7, and EC 7-8;

(4)   Brafman, as an officer of the Court, knowingly
      lied to the District Court Judge in his "sealed"
      July 10, 2006, letter, thus directly violating the
      duties of loyalty, zealousness, confidentiality,
      and the prohibitions against conflicts of inerest,
      by falsely telling her, in effect, that Gabayzadeh

-41-

arrogantly insisted that he was totally innocent,
that he failed to cooperate with the Defendants
herein, and that he refused to take Brafman's
persistent advice to plead guilty. See "Exhibit 27";
See DR 102(A)(3) and (4), DR 6-102(A), DR 4-101
(B)(1), (2), and (3), DR 5-101(A), DR 5-105(A),
EC 4-4, EC 4-5, EC 6-6, EC 6-5, EC 5-2, EC 7-26,
EC 7-35, EC 7-36, DR 1-102(A)(3), (4), (5), and
(7), DR 7-102(A),(5), and (8);

(5) Failing to turn over vital attorney work product,
as detailed aforesaid and incorporated herein,
because the client failed to sign and return a
release of potential malpractice claims against
them, thereby protecting their own selfish
interests and working to weaken and derogate the
client's defense in the federal criminal trial
that they knew carried ominous punishment; See
"Exhibit 18"; See DR 7-109(A), DR 6-102(A), EC
6-6, DR 7-102(A)(3), and DR 7-101(A);

(6) Brafman, as an officer of the Court, blatantly
lied to the United States District Court Judge
in his "sealed" letter dated July 10,2006, by
falsely telling her that he had turned over to
trial counsel "all of the work product that we
had created and assembled up until that point
and time."

-42-

See "Exhibit 27"; See DR 1-102(A)(3), (4), (5), and (7);

(7) That astonishingly shocking falsehood, uttered by a lawyer to a presiding federal judge, is proved false by his own earlier letter to trial counsel, in which he acknowledged that he specifically excluded the work product from the mailing of file documents to her. See "Exhibit 19"; See DR 1-102(A)(3), (4), (5), and (7);

(8) He also did not tell the Court in the July 10, 2006 letter that he demanded a release of "all claims" from the client as a mandatory prerequisite to releasing the work product, and that he did not in fact release that work product because he did not receive that demanded ransom; See "Exhibit 18"; See DR 1-102(A)(3), (4), (5), and (7), DR 6-102(A), DR 4-101(B)(1), (2), and (3), EC 4-4, EC 6-6, EC 6-5, EC 7-36, DR 7-101 (A)(3), DR 7-102(A)(3), (5), and (8);

(9) Brafman's egregious lies to the United States District Court Judge in that July 10, 2006 "sealed" letter, effectively poisoned the Judge's perception of Gabayzadeh's character, and falsely inculcated the idea of Brafman's own professional excellence in counseling Gabayzadeh; the Judge did in fact chastise

-43-

Gabayzadeh at sentencing, for the very issues
falsely reported to her by Brafman; See
"Exhibit 27"; See DR 1-102(A)(3), (4), (5), and
(7), DR 6-102(A) DR 4-101(B)(1), (2), and (3),
EC 4-4, EC 6-6, EC 6-5, EC 7-36, DR 7-101(A)(3),
and DR 7-102(A)(3), (5), and (8);

(10) Brafman lied to the Judge in other self-serving
respects; for example, he falsely told the Judge
in the July 10 letter that he discussed a pre-
indictment disposition with the prosecutors
"often" but that the client thwarted it by
stubbornly maintaining his absolute innocence;
actually, Brafman did not discuss such disposition
with the prosecutors despite knowing that
Gabayzadeh accepted responsibility in several
significant respects; See DR 1-102(A)(3), (4),
(5), and (7), DR 6-102(A), DR 4-101(B)(1), (2),
and (3), EC 4-4, EC 6-6, EC 6-5, EC 7-36, and
DR 7-101(A)(3), (5) and (8), and DR 7-102(A)(3);
See "Exhibit 27";

(11) Failing to investigate, interview, and/or follow
up with all of the important witnesses; See EC
6-1 and DR 6-101(A)(3);

(12) Allowing Amzad and Schwartz to obtain, without
legal authority, Gabayzadeh's secret, confidential,
and privileged information that they used against

-44-

him to negotiate Amzad's cooperation
agreement; See EC 5-21, EC 5-22, EC 4-2,
EC 4-4, EC 4-5, DR 4-101(B)(1), (2) and
(3);

(13) Allowing Gabayzadeh to believe that
Schwartz was a member of Gabayzadeh's
"defense team";

(14) Failing to advise Gabayzadeh and protect him
from the dangers of allowing Amzad and Schwartz
to freely obtain secret and privileged
information; See EC 4-5, EC 4-2, EC 4-4,
DR 4-101(B)(3), EC 5-21, EC 5-22;

(15) Failing to advise Gabayzadeh to not
communicate with Amzad and/or Schwartz and
with criminal co-defendants or adverse witnesses;
See EC 5-21, EC 5-22, EC 4-2, EC 4-4, EC 4-5,
DR 4-101(B)(1), (2), and (3);

(16) Failing to advise Gabayzadeh of Amzad's plea
negotiations when they first learned of them,
thus allowing Gabayzadeh to continue talking
to Amzad even while Amzad was reporting
everything to the prosecutors; See EC 5-21,
EC 5-22, EC 4-2, EC 4-4, EC 4-5, and DR 4-101
(B)(1), (2), and (3);

(17) As detailed above and incorporated herein, the
Defendants engaged in conduct toward their

-45-

client that is dishonest, deceitful, fraudulent, and constitutes misrepresentation; See DR 102(A)(4);

(18) Katzberg and his firm allowed Brafman, who initially hired them and who at times processed their legal fees over to them, to direct and regulate their professional judgment and to compromise their duty to maintain Gabayzadeh's confidences and secrets; See DR 5-107(B), DR 4-101(B)(1), (2), and (3), EC 4-2, EC 4-4, EC 4-5, EC 5-21, and EC 5-22;

(19) Brafman and his firm sought to limit prospectively their liability for malpractice, and presumably to limit the liability of the other Defendants, by demanding a release from Gabayzadeh as ransom before they would turn over the critical work product that established the core of Gabayzadeh's defense; See DR 6-102 (A), DR 1-102(A)(5), DR 7-109(A), and DR 7-102 (A)(3);

(20) Failing to advise Gabayzadeh of their purported belief that he was guilty and could not prevail at trial;

(21) Failing to maintain communication and follow-up with favorable witnesses, and failing to communicate the nature and importance of that

-46-

evidence to Gabayzadeh's trial counsel;

(22) As detailed above and incorporated herein,
the Defendants failed often to act in a
manner consistent with the best interests
of the client; See EC 5-1, DR 7-101(A)(1),
EC 7-9 and EC 7-26;

(23) As detailed above and incorporated herein,
Defendants violated their professional duty to
not suppress any evidence that they had a
legal obligation to reveal or produce; See
DR 7-109(A);

(24) Charging unreasonable and excessive fees under
the circumstances; See DR 7-102(3);

(25) Withdrawing from representation prior to trial,
and then not providing an accounting nor a
refund for unearned, pre-paid trial fees, and
not refunding the unearned pre-trial fees;
See DR 2-110(A)(3) and DR 9-102;

(26) Withdrawing from representation prior to trial
in a veiled attempt to hide their malpractice,
without taking steps to reasonably avoid
foreseeable additional prejudice to Gabayzadeh's
rights and by negligently, recklessly, and
knowingly allowing such additional prejudice
to occur; See DR 2-110(A)(2);

(27) Brafman and his firm negligently, recklessly

-47-

and knowingly violated, inter alia, EC 4-2, EC 4-4, EC 4-5, and DR 4-101(B), (1), (2), and (3), by using secret, privileged and confidential information acquired in the course of representing Gabayzadeh, to disparage him to the sentencing court and to protect their own selfish and conflicted interest, without consent after full disclosure;

(28) Brafman and his firm negligently and recklessly incurred a severe conflict of interest by returning to represent Gabayzadeh at sentencing in 2006;

(29) Despite Brafman's extortionist demand for a release of claims from Gabayzadeh made in writing on April 5, 2004 and his subsequent retalitory withholding of work product, Brafman, carelessly and recklessly, returned to address the sentencing court, in the nefarious July 10, 2006 letter, and at sentencing, despite being heavily cloaked in a shroud of conflict against Gabayzadeh's interests, and he did then cause grievous harm and prejudice to his client;

(30) The Defendants herein did not adequately prepare their investigation and they did not fully investigate and/or follow up on several

-48-

important defenses, nor did they learn the
detailed facts of the pertinent events involved;

(31) Defendants herein, through Katzberg, hired a
paralegal to research LaSalle Bank's wrongdoing,
and then the Defendants neglected to follow up
or present any findings, reports, or conclusions,
nor did they provide the applicable work product
to Gabayzadeh or his trial counsel;

(32) Defendants herein neglected to develop the
LaSalle Bank involvment because Brafman
negligently and recklessly directed the other
Defendants to not agressively pursue LaSalle;
that decision is memorialized in a memo from
Kelly Young to Brafman, Liang, and Andrea Zellan
dated March 5, 2002, but not revealed to
Gabayzadeh until the May 7, 2007 mailing.  A
true and correct copy of that memo is attached
hereto  and made a part hereof as "Exhibit 37";

(33) Defendants herein failed to seek the client's
lawful objectives by not pursuing negotiations,
including at the pre-indictment and pre-trial
phases, when such negotiations are readily
available.  See DR 7-101(A)(1);

(34) Defendants failed to contact and interview
ATI's corporate counsel, Nicholas Kaiser,
to get his statement; Brafman tried to keep

-49-

Kaiser out of the investigation, despite knowing

that Kaiser's involvement was large;

(35) In a June 17, 2003, memo from Katzberg to

Brafman, Katzberg identifies a hand-written note

from Brendan McDonald of Arthur Anderson,

stating that Ed Stein instructed the accountants

to perpetrate fraud, and that everything runs

through Stein. A true and correct copy of that

memo and the hand-written note are attached

hereto and made a part hereof as "Exhibit 38";

(36) In that June 17, 2003, memo, Katzberg tells

Brafman that, "I will await your return before

proceeding"; Defendants negligently and

recklessly did not follow up on that critical

defense item;

(37) On September 25, 2003, John Gabayzadeh sent a

fax to Defendant Katzberg with a detailed list

of witnesses to be interviewed, but Katzberg

and the Defendants neglected to interview many

or most of them;

(38) The Defendants herein were aware that evidence

of criminality existed against Nicholas Kaiser,

but they did not advise or allow Gabayzadeh

to cooperate with the Government on that

information because they tried to keep Kaiser

out of the investigation, placing Kaiser's

-50-

interests above and ahead of those of their
client

(39) Further, a viable defense existed that Kaiser
was knowingly instrumental in many of the
investigated frauds, and that he counseled and
approved Gabayzadeh's actions, but Defendants
did not act on that defense in order to protect
Kaiser.

171. The Defendants' malpractice, breaches of
professional responsibility, and breaches of fiduciary duties
were outrageous and were carried out in reckless, wanton and
callous disregard for Plaintiff's rights, so as to require
the imposition of punitive damages.

172. As a direct result of the Defendants' negligence,
malpractice, breaches of professional responsibility, and of
fiduciary duties, Plaintiff has suffered and is suffering the
losses set forth above and incorporated herein, for which he
claims and is entitled to damages.

WHEREFORE, Plaintiff demands that judgment be entered
in his favor and against the Defendants, jointly and severally,
for compensatory and punitive damages, along with costs,
interest, applicable penalties, and reasonable legal fees
incurred or to be incurred herein, with the amounts of said
damages to be specifically determined upon trial of this matter.

COUNT IV:

BREACH OF CONTRACT

Gabayzadeh v. All Defendants

(Except Liang and Schwartz)

173. Plaintiff incorporates by reference all of the previous photographs as though they were set forth here at length.

174. The Defendants entered into various written retainer agreements with Plaintiff for the providing of legal  services to him and related business entities, as set forth above and specifically incorporated herein. See "Exhibits 1, 2, 3, 6, and 12."

175. Defendants received valuable consideration for their promises to provide competent and professional services under each contract. See "Exhibits 8, 9, 12, and 34."

176. The Defendants materially breached their contractual duties, express and implied, under each of those agreements, to provide competent and ethical professional services in that they continually failed to provide services that were equal to or above the minimum required level of competence under the circumstances.

177. Plaintiff suffered damages as a result of the Defendants breaches of their contractual duties, and he lost the amounts paid to them under the agreements; he also suffered other direct and consequential damages as a result of the breaches, for which he is also entitled to compensation, in

an amount to be determined upon trial of this matter.

178. Due to their breaches of each set of the listed contracts, Plaintiff is entitled to compensatory and consequential damages with interest, costs, applicable penalties, and reasonable legal fees incurred or to be incurred herein.

WHEREFORE, Plaintiff demands judgment, including compensatory damages, interest, cost, and applicable penalties, against the specified Defendants for breach of the specified contracts, for direct and consequential damages, and for the reasonable cost of legal services incurred or to be incurred herein, in amounts to be specifically determined upon trial of this matter.

## COUNT V:

### FRAUD

### Gabayzadeh v. All Defendants

179. Plaintiff incorporates by reference all of the previous paragraphs as though set forth here at length.

180. The Defendants made material misrepresentations and false statements of material fact to Gabayzadeh, the Court, and to others, in connection with their professional representation of him, as specifically detailed above and incorporated herein.

181. Defendants also withheld material information from

-53-

Gabayzadeh and fraudulently failed to fully inform him of that information, which it was their solemn duty to do, as aforesaid and incorporated herein.

182. Schwartz fraudulently encouraged Gabayzadeh, by active misrepresentation of her professional role, and by failing to explain the pertinent ethical precepts, to communicate secret, privileged, and confidential information to her, as detailed above and incorporated herein, which she then used and revealed to others to his great and permanent detriment, without obtaining his knowing consent, waiver or authority to to do so.

183. Schwartz also agreed with the other Defendants that she would obtain confidential and privileged information by joining with them to make fraudulent misrepresentations to Gabayzadeh, such as that Schwartz was a part of Gabayzadeh's "defense team" and that Schwartz was working under Brafman's directions.

184. The fraudulent representations of the Defendants, as stated above, and as incorporated herein, also constituted direct violations of many of the disciplinary rules governing lawyers.

185. The fraudulent misrepresentations of the Defendants, which Gabayzadeh believed and relied upon, as stated and incorporated herein, directly caused grevious harm to the Plaintiff, for which he claims damages.

186. The fraud of the Defendants was outrageous, and

-54-

was carried out in reckless, wanton, cruel and callous disregard for Gabayzadeh's rights as a criminal defendant, and in utter disrespect of their fiduciary duties, which requires an award of punitive damages against them.

187. As a direct result of Defendants' fraud, Plaintiff has suffered  the specific damages set forth above and incorporated herein by reference, for which he claims and is entitled to damages.

WHEREFORE, Plaintiff demands that judgment be entered in his behalf and against the Defendants, jointly and severally, for compensatory and punitive damages, and for costs, interest, penalties if applicable, and reasonable legal fees incurred or to be incurred, in amounts to be determined upon trial of this matter.

### COUNT VI:

## WRONGFUL CONVERSION – DEFALCATION OF PLAINTIFF'S FUNDS
## BREACH OF FIDUCIARY RESPONSIBILITIES

### Gabayzadeh v. Schwartz

188. Plaintiff incorporates by reference all of the previous paragraphs as though fully set forth herein.

189. On or about October 14, 2003, Plaintiff and/or persons on his behalf, transfered the sum of $157,846.00 to co-Defendant Ali Amzad's account for payment of certain

expenses and legal fees.  A true and correct copy of the documentation of that transaction is attached hereto and made a part hereof as "Exhibit 39."

190. Amzad turned these funds over to Schwartz and she placed them in her trust account.

191. Schwartz made a distribution to Co-Defendant Brafman's account in the amount of $50,000.00 toward Gabayzadeh's legal fees, as directed by Brafman.

192. After making other distributions, Schwartz confiscated an undetermined sum, being at least $100,000.00, to herself without authority, accounting, or a right to do so.

193. Plaintiff and/or his companies had already paid Schwartz in excess of $100,000.00 for pre-trial fees per Schwartz's written agreement.  See "Exhibit 4."

194. The said written agreement provided for an additional legal fee of $100,000.00 if Amzad went to trial. See "Exhibit 4."

195. Shortly after receiving the funds into her trust account, Schwartz negotiated a pre-trial cooperation agreement for Amzad.

196. Amzad therefore did not go to trial, and Schwartz did not provide trial representation to him.

197. She had a fiduciary and professional responsibility to return the balance of the funds to Gabayzadeh' or his representatives and to give Gabayzadeh an accounting.

198. Instead, Schwartz confiscated and defalcated to

herself from her trust account, the said balance, which was $100,000.00 or more of Plaintiff's funds, that she had a legal duty to refund to Plaintiff and/or his representatives.

199. Schwartz ignored all request for an accounting made by Gabayzadeh and/or his family members on his behalf including on August 12, 2004, September 9, 2004, September 16, 2004, and September 24, 2004.  True and correct copies of those inquiries are attached hereto and made a part hereof. See "Exhibit 40."

200. Schwartz violated various ethical and fiduciary duties, including her duty to honesty, to provide a proper accounting of other's funds to their owner, and her duty, as a professional and as an officer of the Court, to act lawfully and legally in such matters.

201. Schwartz's actions and omissions were carried out in reckless, wanton, and callous disregard for Gabayzadeh's rights and in  shameless violation of her ethical, legal, and fiduciary duties, thus warranting an award of punitive damages.

202. As a result of her illegal conversion and defalcation of Plaintiff's funds, Plaintiff lost at least $100,000.00 or more, for which he claims damages, interest, costs, the imposition of an award for punitive damages, and any other appropriate relief.

WHEREFORE, Plaintiff demands judgment against

Defendant Schwartz in the specific amount defalcated, plus other compensatory damages and losses as stated above and incorporated herein, and for costs, interest, penalties if allowed, reasonable legal fees incurred or to be incurred herein, and for an award of punitive damages, in amounts to be determined upon trial of this matter.

Date: _April 24, 2009_

Respectfully submitted,

Mehdi Gabayzadeh
Pro-Se Plaintiff
Register No. 68419-053
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

# EXHIBIT 1

# BRAFMAN & ROSS, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE

26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN

CHARLES A. ROSS

JENNIFER A. LIANG

MELINDA SARAFA

ANDREA ZELLAN

MARK M. BAKER

OF COUNSEL

February 18, 2002

**VIA FEDERAL EXPRESS**

**PERSONAL & CONFIDENTIAL**

Mr. Mehdi Gabayzadeh

President and Chief Executive Officer

American Paper Corporation

300 Rabro Drive

Hauppauge, New York 11788

Dear Mr. Gabayzadeh:

You have requested that this firm undertake to represent you in connection with a criminal investigation presently being conducted by the United States Attorney's Office for the Eastern District of New York. To date, no formal criminal charges have been filed against you although you have been characterized as one of the principal "targets" of that investigation. The investigation, relates in part, to various financial relationships maintained by American Tissue Inc., a company that you were formally associated with and The LaSalle Bank.

In return for representation during the pre-indictment stage of the proceedings, you have agreed to pay this firm a retainer of $100,000.00 against which I will bill you at my hourly rate of $650.00 per hour for time expended by me in connection with this case, and at the rates of $450.00, $375.00 and $350.00 per hour for time required of any attorney associated with this firm whose assistance may be necessary in order to properly represent you in this inquiry. In addition, you will be billed at the rates of $125.00 per hour for work performed by any paralegal and/or law clerk whose assistance may be required.

## BRAFMAN & ROSS, P.C.

It is understood that the $100,000.00 retainer, constitutes a minimum fee that this firm requires in matters of this kind, recognizing as I do when setting the minimum fee, the time that will be required, the degree of difficulty of the case, the urgency of the matter, the necessity of declining other work so as to have the time available to properly attend to this matter and my degree of expertise and experience in handling cases of this nature. Accordingly $100,000.00 is hereby specifically designated as a general minimum fee for assuring our availability to devote an appropriate amount of attention to this matter and to compensate this firm for the possibility of having to defer other work as a result of taking this case. It is thus understood and agreed that no portion of the $100,000.00 minimum fee is to be returned regardless of the amount of time that is involved in attempting to resolve this matter without criminal prosecution.

I will keep careful track of the time expended by me and the other attorneys associated with this firm in connection with these matters and so advise you by monthly statements of account that will be mailed to you at the above address. In the event this matter is resolved within the time period reflected by the initial retainer, then no additional fees will be incurred in connection with these proceedings. To the extent however, that the time required to properly represent you in these matters exceeds the period covered by the retainer then I will so inform you by monthly statements of account that will be mailed to you at the above address. Any balance due on any such statement is to be paid upon receipt of the statement in question.

It is understood that the fees discussed in this agreement relate to representation of you personally by this law firm. Accordingly, any fees incurred by any other attorneys and/or law firms whose services will be required in order to properly represent you in this and/or other proceedings are to be paid by you directly to those firms and are not to be considered the obligations of this firm. Nor is any part of the retainer discussed herein to be used to pay any fees incurred by any other firm whose assistance may be required in order to properly represent you in this matter. It is my understanding that you have already retained other counsel to represent you in connection with pending bankruptcy proceedings and/or other civil litigations that are either pending or are expected to be filed in the near future. Fees to those firms are to be paid by you and are not the obligations of this firm.

It is also understood that should the services of a private investigator and/or forensic accountant be required in order to properly represent you, any such fees incurred by any investigator and/or forensic accountant are to be paid directly by you, with the understanding that no such additional legal obligations will be incurred on your behalf without your prior approval.

BRAFMAN & ROSS, P.C.

Finally, as we discussed, this retainer agreement will continue in force up until such time as you are formally charged by Indictment or formal Complaint, or a determination is made by the United States Attorney's Office that no criminal prosecution will be forthcoming. In the event that this case is resolved pre-indictment, no portion of the $100,000.00 retainer will be returned to you.

In the event that formal criminal charges are filed against you, however, a separate retainer agreement will be executed between us when and if necessary should you request that this firm continue to represent you if and when formal charges are filed. At that time, we will provide you with the option of continuing on an hourly basis and/or discuss with you the terms of a flat fee agreement to cover the post-indictment pre-trial period and any trial should one be held. If at that time we agree to change the terms of our fee agreement from an hourly agreement to a flat fee agreement I will apply as a credit against any flat fee, any unused portion of the $100,000.00 retainer if any credit balance remains at that time. Any modification of our fee agreement however, is to be documented in a separate retainer agreement executed between us if and when it becomes necessary for us to do so.

If this letter accurately sets out the terms of our understanding in connection with this matter, please so indicate by signing a copy of this agreement where provided and returning it to me at your very earliest convenience.

Very truly yours,

Benjamin Brafman

SIGNED AND AGREED TO:

MEHDI GABAYZADEH

DATE:

2/15/02

# EXHIBIT 2

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

TO:
Mr. Mehdi Gabayzadeh

FAX NUMBER:
(631) 342-9777

FROM:
Benjamin Brafman

DATE:
March 13, 2002

TOTAL NO. OF PAGES INCLUDING COVER:
3

RE:
Personal & Confidential

CC:

☐ URGENT          ☐ FOR REVIEW          ☐ PLEASE COMMENT          ☐ PLEASE REPLY

NOTES/COMMENTS:

### PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# BRAFMAN & ROSS, P.C.

ATTORNEYS AT LAW
767 THIRD AVENUE
26TH FLOOR
NEW YORK, NEW YORK 10017
TELEPHONE: (212) 750-7800
FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN
CHARLES A. ROSS

MARK M. BAKER
OF COUNSEL

JENNIFER A. LIANG
MELINDA SARAFA
ANDREA ZELLAN

March 13, 2002

**VIA TELEFAX (631) 342-9777**
**PERSONAL & CONFIDENTIAL**
Mr. Mehdi Gabayzadeh
President and Chief Executive Officer
American Paper Corporation
300 Rabro Drive
Hauppauge, New York 11788

Dear Mr. Gabayzadeh:

This letter will confirm our understanding that Robert F. Katzberg of Kaplan & Katzberg is being retained to help supervise the pending civil litigation involving American Tissue Inc. and related companies and that Les Levine, a licensed Private Investigator, is being retained by Mr. Katzberg to assist in the interview of various individuals who may have important information relating to the ongoing litigations and related investigations.

I will notify all of the civil lawyers involved in representing you at this time that they are authorized to speak with Mr. Katzberg and should understand that he is being retained in order to supervise the various pending litigations. Mr. Katzberg recognizes that any important decisions relating to any litigation are to be passed by me as well. Mr. Katzberg has his offices in the same building as my firm and accordingly, he will be available to meet with you at my office when it is necessary for us to meet personally.

Thank you for your courtesy in connection with this matter and if you would sign a copy of this letter where indicated and return it to me at your earliest convenience I will then notify all counsel of Mr. Katberg's involvement and his authorization by you to oversee and supervise all civil litigation and the bankruptcy

**BRAFMAN & ROSS, P.C.**

proceedings. It will then be understood by all counsel who represent you that no filings are to be made on your behalf without Mr. Katzberg's approval.

Very truly yours,

Benjamin Brafman

**SIGNED AND AGREED TO:**

**MEHDI GABAYZADEH**

**DATE:**                        3/13/02

### KAPLAN & KATZBERG
ATTORNEYS AT LAW
767 THIRD AVENUE
26TH FLOOR
NEW YORK, N.Y. 10017

KENNETH J. KAPLAN
ROBERT F. KATZBERG
MAYO SCHREIBER, JR.

TELEPHONE
(212) 750-3100

FACSIMILE
(212) 750-8628

March 13, 2002

**Personal and Confidential**
Mr. Mehdi Gabayzadeh
President and CEO
American Paper Corporation
300 Rabro Drive
Hauppauge, New York  11788

**Re:   American Paper Corporation investigation, E.D.N.Y.
and related matters**

Dear Mr. Gabayzadeh:

You have retained the law firm of KAPLAN & KATZBERG to represent American Paper Corporation in connection with the above-captioned investigation and to supervise various civil litigations that are presently pending. My firm is not substituting as counsel of record in any of those proceedings. It is understood and agreed that the retainer for our representation for the investigatory phase of this matter shall be twenty thousand dollars ($20,000.00). The retainer shall be credited against all time expended, to be calculated at our prevailing hourly rate, currently four hundred fifty dollars ($450.00) per hour for partners' time, two hundred eighty-five dollars ($285.00) per hour for associate's time, and ninety dollars ($90.00) per hour for paralegal's time. Should the hours expended exceed the retainer amount, you will be billed on a monthly basis for all such additional time. Should our representation for the investigatory phase be completed without expending the retainer in its entirety, the unused portion shall be returned to the client within 30 days of such completion. In the event this matter proceeds to formal charges of any kind, a new retainer agreement will be required. All fees paid in connection with this agreement will be credited toward any future fees.

Finally, the legal fees quoted herein do not include costs or disbursements which may necessarily arise in connection with our representation. Costs and disbursements such as filing fees, courier service, travel, investigators, accountants, and expert witnesses and services shall be paid by the client as they accrue.

American Paper Corp.
March 13, 2002
Page 2

However, no individual cost or disbursement in excess of two hundred fifty dollars ($250.00) shall be incurred without prior approval of the client.

Please indicate the acceptance of this agreement by signing below. I authorize you to forward my $20,000.00 retainer to the special account maintained by Brafman & Ross, P.C., pursuant to the wiring instructions provided by Mr. Brafman's firm.

Very truly yours,

**KAPLAN & KATZBERG**

By: _____
Robert F. Katzberg

I have read the above and understand and agree to its terms and conditions.

AMERICAN PAPER CORPORATION

By: _____
Mehdi Gabayzadeh

RFK:dsh

# EXHIBIT 3

# KAPLAN & KATZBERG

ATTORNEYS AT LAW
767 THIRD AVENUE
26TH FLOOR
NEW YORK, N.Y. 10017

KENNETH J. KAPLAN
ROBERT F. KATZBERG
MAYO SCHREIBER, JR.

TELEPHONE
(212) 750-3100

FACSIMILE
(212) 750-8628

## FAX TRANSMISSION SHEET

DATE: 3-26-03

TO: Mehdi Gabayzadeh

FROM: Robert Katzberg

RE:

FAX #: (631) 342-9777

NUMBER OF PAGES (including cover sheet): 4

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS PRIVILEGED AND CONFIDENTIAL, AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND OTHERS WHO HAVE BEEN SPECIFICALLY AUTHORIZED FOR RECEIPT. IF THE RECIPIENT IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED.

KAPLAN & KATZBERG
ATTORNEYS AT LAW
767 THIRD AVENUE
26TH FLOOR
NEW YORK, N.Y. 10017

KENNETH J. KAPLAN
ROBERT F. KATZBERG
MAYO SCHREIBER, JR.

TELEPHONE
(212) 750-3100

FACSIMILE
(212) 750-8828

March 26, 2003

**VIA TELECOPIER**
**(631) 342-9777**
Mr. Mehdi Gabayzadeh
President and CEO
American Paper Corporation
300 Rabro Drive
Hauppauge, New York  11788

Dear Mehdi:

Enclosed is the retainer agreement we discussed.  Please review same and if it meets with your approval, sign and fax it back to me.

Our banking instructions are as follows:

Kaplan & Katzberg,
Acct. No. 6301835629,
Bank of New York,
AB No. 021000018

If you have any questions, please let me know.

Sincerely,

Bob

Robert F. Katzberg

RFK:dsh

Enclosure

## KAPLAN & KATZBERG

ATTORNEYS AT LAW
767 THIRD AVENUE
26TH FLOOR
NEW YORK, N.Y. 10017

KENNETH J. KAPLAN
ROBERT F. KATZBERG
MAYO SCHREIBER, JR.

TELEPHONE
(212) 750-3100

FACSIMILE
(212) 750-8628

March 26, 2003

**VIA TELECOPIER**
**(631) 342-9777**
Mr. Mehdi Gabayzadeh
President and CEO
American Paper Corporation
300 Rabro Drive
Hauppauge, New York  11788

Re:   <u>United States v. American Paper Corp.</u>
<u>and American Tissue, Inc., et al.,</u>
03 CR 162

Dear Mr. Gabayzadeh:

You have retained the law firm of KAPLAN & KATZBERG to represent American Paper Corporation and American Tissue, Inc. in connection with the above-captioned indictment. It is understood and agreed that all legal services shall be charged on a flat fee basis, and that our fees shall be divided into pre-trial fees and trial fees. The pre-trial fee shall be one hundred thousand dollars ($100,000.00), twenty-five thousand dollars of which is due and owing upon the execution of this agreement. The balance of the pre-trial fee shall be paid upon a schedule to be agreed upon. Should this matter proceed to trial, the trial fee shall be one hundred thousand dollars ($100,000.00) for the first month of trial, and fifteen thousand dollars ($15,000.00) for each week, or part thereof, thereafter. The $100,000.00 is due and owing 90 days before the trial date. In the event that this case is disposed of within 30 days prior to trial, KAPLAN & KATZBERG is entitled to retain one-half the $100,000.00 trial fee.

American Paper Corp.
American Tissue Inc.
March 26, 2003
Page 2

It is, finally, understood and agreed that the legal fees quoted herein do not include costs or disbursements which may necessarily arise in connection with our representation. Costs and disbursements such as filing fees, hotel and airfare, investigators, accountants, and expert witnesses and services shall be paid by the client as they accrue. However, no individual cost or disbursement in excess of two hundred fifty dollars ($250.00) shall be incurred without prior approval of the client.

Please indicate the acceptance of this agreement by signing below.

Very truly yours,

**KAPLAN & KATZBERG**

By: _____
Robert F. Katzberg

I have read the above and understand and agree to its terms and conditions.

AMERICAN PAPER CORPORATION
AMERICAN TISSUE, INC.

By: _____
Mehdi Gabayzadeh

RFK:dsh

# EXHIBIT 4

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TEL.(212)750-7800

FAX.(212)750-3906

www.ctswlaw.com

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Mehdi Gabayzadeh | FAX NUMBER: (631) 342-9777 |
| FROM: Jennifer A. Liang | |
| DATE: April 5, 2002 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| RE: | |
| CC: | |

☐ URGENT      ☐ FOR REVIEW      ☐ PLEASE COMMENT      ☐ PLEASE REPLY

NOTES/COMMENTS:

## PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

## DEBORAH A. SCHWARTZ

COUNSELOR AT LAW
41 MADISON AVENUE
NEW YORK, NEW YORK 10010
(212) 252-1323

———

FACSIMILE
(212) 252-0449

**April 3, 2002**

American Paper Corp.
C/o Benjamin Brafman, Esq.
767 Third Avenue
New York, New York 10017

Re:  Retainer Agreement

Dear Gentlemen:

This letter will confirm the agreement pursuant to which American Paper Corp has retained me to represent, counsel and advise John Gabayzadeh, Fran Robertson, Ali Amzad and John Jackmore, in connection with the inquiry by the Trustee in Bankruptcy of American Tissue.

American Paper Corp. agrees to pay me the fees and expenses relating to the representation of these. American Paper Corp. will pay me the sum of $ 10,000.00 as a retainer for professional legal services in relation to this matter. I shall keep a record of all time I expend which shall be charged at the rate of $350.00 an hour, my present billing rate.

In addition, I will bill American Paper Corp. on a monthly basis for all disbursements incurred in relation to this matter. Payments for time and disbursements are due within 30 days from the date a bill is rendered.

If American Paper Corp. should discharge me prior to the resolution of the matter, then I will refund any amount that has not been earned pursuant to this retainer agreement.

Please indicate American Paper Corp.'s consent to this arrangement by signing a copy of this letter and return it to me with a check in the amount of $10,000.00.

Sincerely,

Deborah A. Schwartz

Accepted and Agreed To:

# DEBORAH A. SCHWARTZ
COUNSELOR AT LAW
315 PARK AVENUE SOUTH
NEW YORK, NEW YORK 10010
(212) 505-2815

---

FACSIMILE
(212) 505-4064

June 3, 2002

BY FACSIMILE (212) 750-8628

American Paper Corporation
C/o Robert Katzberg, Esq.
Kaplan & Katzberg
767 Third Avenue
New York, New York 10017

FOR PROFESSIONAL SERVICES RENDERED:

Representation of John Gabayzadeh, John Jackamore,
Ali Amzad, Frances Robertson
36.25 hours at $350.00                        $ 12,687.50

Travel to Hauppauge to interview four clients, telephone conferences w/ Jennifer Liang, Robert Katzberg, Beth Levine, Cassondra Joseph and clients, collect, review and produce documents, appear at Four depositions, correspondence Beth Levine, Esq.

Disbursements: travel to Hauppauge, facsimiles, postage, shipping, copying, lunch w/ clients at depositions                         $      619.29

| | |
|---|---|
| Total | $ 13,306.79 |
| Retainer | $ 10,000.00 |
| Balance Due (30 days) | $  3,306.79 |

# GABAYZAL...H LEGAL FEES

| Wired Funds | P Brafman & Ross | A Deborah Schwartz | Y Cohen Tauber Spievack & Wagner | M | E Kaplan & Katzberg | N Les Levine | T Meissner Kleinberg & Finkel | S Saul Bienenfeld | TO: Avi Moskowitz |
|---|---|---|---|---|---|---|---|---|---|
| $50,000 (2/20/02) | $50,000 (2/21/02) | $10,000 (4/12/02) | $25,000 (4/29/02) | | $20,000 (3/19/02) | $10,000 (3/19/02) | $5,000 (4/12/02) | $5,000 (6/6/02) | $5,000 (6/6/02) |
| $50,000 (3/4/02) | $50,000 (3/4/02) | $3,306.79 (7/8/02) | $12,582.89 (6/4/02) | | $1,150 (5/21/02) | | $481.18 (7/8/02) | | |
| $20,000 (3/19/02) | $80,100 (5/21/02) | | $20,000 (7/16/02) | | $7,537.50 (7/8/02) | | | | |
| $10,000 (3/19/02) | $18,674.53 (7/12/02) | | | | | | | | |
| $10,000 (4/10/02) | $25,000 (7/16/02) | | | | | | | | |
| $5,000 (4/10/02) | $26,131.44 (8/12/02) | | | | | | | | |
| $25,000 (4/26/02) | $41,945 (8/29/02) | | | | | | | | |
| $81,250 (5/21/02) | 29,851.47 | | | | | | | | |
| $12,582.89 (5/31/02) | | | | | | | | | |
| $5,000 (6/4/02) | | | | | | | | | |
| $5,000 (6/4/02) | | | | | | | | | |

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Mehdi Gabayzadeh | FAX NUMBER:<br>(631) 342-9777 |
| FROM:<br>Jennifer A. Liang | |
| DATE:<br>October 1, 2002 | TOTAL NO. OF PAGES INCLUDING COVER:<br>2 |
| RE: | |
| CC: | |

☐ URGENT     ☐ FOR REVIEW     ☐ PLEASE COMMENT     ☐ PLEASE REPLY

NOTES/COMMENTS:

## PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# DEBORAH A. SCHWARTZ
### COUNSELOR AT LAW
315 PARK AVENUE SOUTH
NEW YORK, NEW YORK 10010
(212) 505-2815

FACSIMILE
(212) 505-4064

BY FACSIMILE (212) 750-3906

October 1, 2002

American Paper Corporation
C/o Benjamin Brafman Esq.
Brafman & Ross
767 Third Avenue
New York, New York 10017

FOR PROFESSIONAL SERVICES RENDERED:

Representation of John Gabayzadeh, John Jackamore, Ali Amzad, Frances Robertson

August Time
2.75 hrs. at $350.00                                                       $   962.50
review documents re deposition of Ali Amzad, t/c Beth
Levine, t/c Ali Amzad, t/c Denise Veidt, t/c Jennifer
Liang

TOTAL DUE                                                                  $   962.50

PAID

# DEBORAH A. SCHWARTZ
COUNSELOR AT LAW
315 PARK AVENUE SOUTH
NEW YORK, NEW YORK 10010
(212) 505-2815

FACSIMILE
(212) 505-4064

BY FACSIMILE (631) 342-9777                October 31, 2002

American Paper Corporation
300 Rabro Drive
Hauppague, New York 11747
Att: John Gabayzadeh

FOR PROFESSIONAL SERVICES RENDERED:

Additional Retainer for the Representation of Ali Amzad        $5,000.00

As per the direction of Ali Amzad, I am forwarding a bill
For an Additional Retainer

cc. Ali Amzad
    Benjamin Brafman, Esq.

# DEBORAH A. SCHWARTZ
### COUNSELOR AT LAW
### 315 PARK AVENUE SOUTH
### NEW YORK, NEW YORK 10010
### (212) 505-2815

---

### FACSIMILE
### (212) 505-4064

November 8, 2002

BY FACSIMILE (631) 342-9777

American Paper Corporation
300 Rabro Drive
Hauppague, New York 11747
Att: John Gabayzadeh

FOR PROFESSIONAL SERVICES RENDERED:

Additional Retainer for the Representation of Ali Amzad          $5,000.00

As per the direction of Ali Amzad, I am forwarding a bill
For an Additional Retainer

cc. Ali Amzad
    Benjamin Brafman, Esq.

# DEBORAH A. SCHWARTZ
Counselor At Law
152 West 57th Street, 24th Floor
New York, New York 10019
(212) 582-0200

Facsimile
(212) 582-4700

BY FACSIMILE (631) 342-9777

February 24, 2003

American Paper Corporation
300 Rabro Drive
Hauppague, New York 11747
Att: John Gabayzadeh

FOR PROFESSIONAL SERVICES RENDERED:
For the Period September 1, 2002 to date
28.75 hours at $350.00/ hour

$ 10,062.50

Conferences and telephone conferences w/ Ali and John
Conferences and telephones conferences w/ Jennifier Liang and Ben
Brafman, telephone conferences w/ AUSA John Curran, Rob Coleman,
Jason Blasberg, review records

| | |
|---|---|
| Disbursements: travel to Hauppauge, long distance telephone | $ 37.57 |
| Total | $ 10,100.07 |
| Retainer Received | $ 10,000.00 |
| Additional Retainer Requested | $ 5,000.00 |

cc. Ali Amzad

# EXHIBIT 5

# DEBORAH A. SCHWARTZ
COUNSELOR AT LAW
315 PARK AVENUE SOUTH
NEW YORK, NEW YORK 10010
(212) 505-2815

———

FACSIMILE
(212) 505-4064

June 3, 2002

BY FACSIMILE (212) 750-8628

American Paper Corporation
C/o Robert Katzberg, Esq.
Kaplan & Katzberg
767 Third Avenue
New York, New York 10017

FOR PROFESSIONAL SERVICES RENDERED:

Representation of John Gabayzadeh, John Jackamore,
Ali Amzad, Frances Robertson
36.25 hours at $350.00                        $ 12, 687.50

Travel to Hauppauge to interview four clients, telephone conferences w/ Jennifer Liang,
Robert Katzberg, Beth Levine, Cassondra Joseph and clients, collect, review and produce
documents, appear at Four depositions, correspondence Beth Levine, Esq.

Disbursements:  travel to Hauppauge, facsimiles, postage, shipping, copying, lunch w/ clients at
depositions                          $      619.29

Total                                $ 13,306.79

Retainer                             $ 10,000.00

Balance Due (30 days)                $  3,306.79

# EXHIBIT 6

October 14, 2002

**PERSONAL & CONFIDENTIAL**
Mr. Mehdi Gabayzadeh
President and Chief Executive Officer
American Paper Corporation
300 Rabro Drive
Hauppauge, New York 11788

"Fixed Fee"
Agreement

Dear Mr. Gabayzadeh:

You have requested that we prepare a retainer agreement in which we convert our fee agreement from an **hourly** fee agreement to a **flat fee** agreement. In response to that request we have prepared this revised agreement.

Thus, you have requested that we continue to represent you in connection with the investigation of your activities by the United States Attorney's Office for the Eastern District of New York and your impending indictment by that Office. You have requested that we change the terms of our understanding from an **hourly** fee arrangement to a **flat fee** agreement with the understanding that all hourly charges presently owed and those incurred up through **October 15, 2002** will be paid by you and that any new fee agreement contemplates the time period from October 15, 2002 up through a trial of the soon to be voted indictment with a second part of the new agreement to cover your actual **trial** on the charges to be filed.

Thus, you have agreed to pay this firm a flat fee of $500,000.000 to cover all

proceedings from October 15, 2002 up through the filing of the indictment and all work to be provided by this firm in the preparation of the case for trial, including the preparation and filing of all pre-trial motions and representation at all post-indictment pre-trial Court proceedings.

In the event that this case is resolved without a trial, by plea and/or dismissal then no additional legal fees will be incurred by you in connection with these proceedings.

Given the complexity of the case to be filed against you it is agreed that $500,000.00 represents the "minimum" fee that this firm requires in a case of this nature, recognizing as I do when setting the minimum fee, the time that will be required, the degree of difficulty of the case, the urgency of the matter, the necessity of declining other work so as to have the time available to properly attend to this matter and my degree of expertise and experience in handling cases of this nature. Accordingly, $500,000.00 is hereby specifically designated as a general minimum fee for assuring our availability to devote an appropriate amount of attention to this matter and to compensate this firm for the possibility of having to defer other work as a result of taking this case.  Accordingly, it is understood that in the event this matter is resolved by plea and/or dismissal prior to trial then, no portion of the $500,000.00 minimum fee is to be returned regardless of the amount

of time that is involved in attempting to resolve this matter prior to trial.

It is expressly understood that the legal fees discussed in this letter are separate and apart from any legal fees incurred by you to any other law firm that is currently representing you, or whose services you may request in the future. Any fees that are incurred by you with respect to those law firms are to be paid by you directly to those firms and are not to be considered part of the fees discussed in this agreement.

It is also expressly understood that in the event that the services of a private investigator are needed in order to properly represent you and/or the services of a forensic accountant, or business experts are necessary in order to properly prepare this case for trial and/or represent you at trial that any such fees to be paid to any such experts or investigator are to be paid directly by you to those individuals or firms and are not to be deemed the obligations of this firm. It is understood that no such experts and/or investigators will be retained by this firm on your behalf without your prior approval.

In the event that this case is not resolved prior to trial and an actual trial of this case is to proceed then you are to pay this firm a flat fee of $500,000.00 to cover a trial that does not exceed four weeks from jury selection through verdict.

In the event that the trial does not exceed **four** weeks from jury selection through verdict then said $500,000.00 trial fee will cover your representation by this firm at trial, regardless of the number of attorneys in this firm who I have assist me in your representation.

It is expressly understood that **Benjamin Brafman** will appear as your lead trial counsel, assuming of course that all fee obligations to this firm have been met and are maintained on a current basis.

With respect to the schedule of payments to be made under the terms of this agreement we have agreed to the following.  Thus, prior to execution of this agreement all time charges incurred by you that are presently owed and those that are incurred by you between October 1, 2002 and October 15, 2002 are to be paid in full.  Thereafter, upon execution of this agreement you are to pay the full $500,000.00 pre-trial fee in its entirety at the time this agreement is executed.

With respect to the $500,000.00 trial fee discussed in this letter you have agreed to pay the full trial fee of $500,000.00 in its entirety no later than **60 days** prior to the firm trial date set by the Court with the understanding that if the case is resolved by plea within 60 days of the trial that 80% of the trial fee ($400,000.00) will be returned with 20% ($100,000.00) of the trial fee retained by this firm for the

extraordinary effort that will be undertaken in the weeks immediately prior to trial.

Any out-of-pocket expenses incurred in connection with this case such as travel, federal express, transcript costs, messenger, photo copying and other miscellaneous expenses will be billed to you under separate cover, with any expenses thus billed to be paid by you on a current basis.

In the unlikely event that a trial in this case exceeds a period of four weeks from jury selection through verdict you agree to pay this firm a weekly trial fee of $100,000.00 for each week or any part thereof that this case continues beyond four weeks. With respect to any weekly trial fee beyond the four week period, said fee is to be paid by you on the Monday of each week when and if the four week period is exceeded.

If this letter accurately sets out the terms of our understanding in how you wish to be billed from October 15, 2002 forward, please so indicate by signing a copy of this letter where indicated and forwarding it to me along with your pre-trial payment of $500,000.00 at this time.

Very truly yours,

Benjamin Brafman

**SIGNED AND AGREED TO:**

**MEHDI GABAYZADEH**

**DATE**