# EXHIBIT 34

198

April 4, 2004

Dear Ben

It was nice to see you again today after a long time. As we mutually agreed today, I am not able to financially support the costs associated for you to represent me for my case and, as you also said you would not be able to satisfy my immediate attention as I believe is needed on a day to day basis.

Ben, you are very famous around the country and have extremely popular clients such as Sean "Puffy"Combs, and Michael Jackson. I am just a small client and cannot be compared to your other clients. I wish you and your family a happy Passover.

Best regards

Mehdi Gabayzadeh and family

---

TX   RESULT   REPORT

NAME:
TEL :6313429777
DATE:APR.05'2004 08:49

| SESSION | FUNCTION | NO. | DESTINATION    STATION | DATE | TIME | PAGE | DURATION | MODE | RESULT |
|---------|----------|-----|------------------------|------|------|------|----------|------|--------|
| 3742 | TX | 01 | 12127503906 | APR.05 | 08:48 | 001 | 00H00'26" | ECM | OK |

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TEL.(212)750-7800

FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

| TO: | FAX NUMBER: |
| --- | --- |
| MEHDI GABAYZADEH | (631) 232-1466 |
| FROM: | |
| BENJAMIN BRAFMAN | (212) 750-3906 |
| DATE: | TOTAL NO. OF PAGES INCLUDING COVER: |
| APRIL 15, 2004 | 3 |
| RE: | |
| PERSONAL & CONFIDENTIAL | |
| CC: | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY

NOTES/COMMENTS:

**PRIVILEGE AND CONFIDENTIALITY NOTICE:**

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# BRAFMAN & ROSS, P.C.

ATTORNEYS AT LAW
707 THIRD AVENUE
26TH FLOOR
NEW YORK, NEW YORK 10017
TELEPHONE: (212) 750-7800
FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN
CHARLES A. ROSS

CHRISTOPHER L. PADURANO
JENNIFER A. LIANG
MELINDA SARAFA
ANDREA ZELLAN

MARK M. BAKER
OF COUNSEL

April 15, 2004

## VIA TELEFAX (631) 232-1466
## PERSONAL & CONFIDENTIAL

Mr. Mehdi Gabayzadeh
President and Chief Executive Officer
American Paper Corporation
300 Rabro Drive
Hauppauge, New York 11788

# RE: UNITED STATES v. MEHDI GABAYZADEH 03 CR 1162 (JS)

Dear Mr. Gabayzadeh:

Following our meeting several days ago when you requested that we no longer continue to represent you I recommended several lawyers that you should interview and consider retaining as counsel of record on your behalf in this case.

Thereafter, at your request I met with you and your son on Thursday, April 8, 2004, at which time you requested that I remain as trial counsel in this case with the understanding that you would retain the law firm of Perini and Hoerger to act as co-counsel. It was your request that Perini and Hoerger would be responsible for preparing this case for trial and that they would be responsible for the preparation and filing of all pre-trial motions on your behalf. You agreed that the full balance of fees due this firm would be paid in full, with any fees to be paid to Perini and Hoerger considered separate and apart from any of the fees to be paid to this firm in accordance with the terms of our revised retainer letter.

At that same meeting, you assured me that you would be able to pay the full fees due this firm within a very short time because you had retained counsel to represent you in a case against your insurance carrier for legal fees to cover your defense of this case. You assured me that the lawyers you had retained had

BRAFMAN & ROSS, P.C.

assured you that your insurance claim would be covered and that any such claim would be resolved in a matter of several **weeks**. At our meeting you provided me with a telephone number for Gerald Oshinsky, Esq. the attorney who would be representing you in your insurance claim and you suggested that I call Mr. Oshinsky.

I have now spoken with Mr. Oshinsky, who, contrary to your representations advised me of much different facts. Thus, although Mr. Oshinsky did confirm that he met with you to discuss the prospect of representing you in a claim against your insurance company, Mr. Oshinsky told me that he had not yet been retained and also advised me that he wanted a $200,000.00 advance retainer to cover the legal fees that you would incur with his firm including the costs of arbitration that he wanted to have in an escrow account prior to initiating formal proceedings. In addition, Mr. Oshinsky advised me that while he agreed that you **might** indeed have a viable claim, he did not give me any reason to feel certain that at the end of the proceedings you would prevail. Perhaps most troubling however was Mr. Oshinsky's prediction, that even if successful, an arbitration would in his judgment take approximately five **months** to resolve, assuming that it was initiated immediately.

In view of the difficulty that I anticipate you will have in guaranteeing the fees that will be due this firm and in view of the willingness of the Perini and Hoerger firm to represent you competently and effectively in this matter, I think should arrange for a formal substitution of that firm now. In view of the fact that a trial of your indictment has not yet even been scheduled and will not be held for many months, there is more than ample time for your new attorneys to learn the case. We will of course cooperate fully to ensure an orderly transition and substitution of counsel.

Please be certain that your new attorneys are in Court on April 23, 2004, when a status conference on your case has been scheduled.

Thank you for your courtesy in connection with this matter.

Very truly yours,

Benjamin Brafman

2

# EXHIBIT 35

202

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

TO: _Mehdi Gahayzadeh_   FAX NUMBER: _(631) 342-9777_

FROM: _Jennifer Liang_

DATE: _4/30/02_   TOTAL NO. OF PAGES INCLUDING COVER: _2_

RE:

CC:

☐ URGENT   ☑ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY

NOTES/COMMENTS:

## PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

April 30, 2002

**VIA TELECOPIER**
Richard Friedman, Esq.
499 Park Avenue
New York, New York 10022

Dear Mr. Friedman:

This is to confirm my advice to you that you are to cease all work on the Boise Cascade and Koplik litigations effective immediately.

Thank you very much.

Very truly yours,

MG

cc: Benjamin Brafman, Esq. (Via Telecopier)
    Robert Katzberg, Esq. (Via Telecopier)



**American Paper Corporation**
300 RABRO DRIVE, HAUPPAUGE, NEW YORK 11788

*This is a copy for your files Denise*

TEL: (631) 232-3300 • FAX: (631) 232-9779
TOLL FREE: (888) 657-1180

April 30, 2002

VIA TELECOPIER

Richard Friedman, Esq.
499 Park Avenue
New York, New York 10022

Dear Mr. Friedman:

This is to confirm my advice to you that you are to cease all work on the Boise Cascade and Koplik litigations effective immediately.

Thank you very much.

Very truly yours,

Mehdi Gabayzadeh

cc: Benjamin Brafman, Esq. (Via Telecopier)
Robert Katzberg, Esq. (Via Telecopier)
Cassondra E. Joseph, Esq.

# EXHIBIT 36

213

# BRAFMAN & ROSS, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

| TO: Mehdi Gabayzadeh | FAX NUMBER: (631) 342-9777 |
|---|---|
| FROM: Jennifer A. Liang | |
| DATE: April 5, 2002 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
| RE: | |
| CC: | |

☐ URGENT        ☐ FOR REVIEW        ☐ PLEASE COMMENT        ☐ PLEASE REPLY

NOTES/COMMENTS:

### PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# COHEN TAUBER SPIEVACK & WAGNER, LLP

*ATTORNEYS-AT-LAW*
19TH Floor
757 Third Avenue
New York, New York 10017

Stephen Wagner
swagner@ctswlaw.com

|  |  |  |
|---|---|---|
| (212) | 586-5800 |
| Fax: (212) | 586-5095 |
| Direct Line : (212) | 586-7265 |

April 19, 2002

**VIA FAX**
American Paper Corp.
c/o Brafman & Ross, P.C.
767 Third Avenue
26th Floor
New York, New York 10017

Re:     Retainer Agreement

Dear Sirs:

We are pleased that you have chosen Cohen Tauber Spievack & Wagner, LLP ("CTSW") to represent you ("Client") in connection with certain matters and issues, including those arising from or related to various litigations in which Client is involved.

New York law now requires that all retentions of attorneys be pursuant to a formal retainer agreement. In accordance with Part 1215 of the Official Compilations of Codes, Rules and Regulations promulgated by the New York Supreme Court Appellate Divisions, the following sets forth the conditions of our engagement:

In respect of this engagement, we will keep records of our time and disbursements generated in connection with this representation and will render monthly statements to Client. These statements are payable upon receipt. Our regular hourly rates are $325-340 per hour for partners and between $140 and $285 per hour for associates. These rates generally are adjusted at the beginning of each calendar year. We may, if necessary, engage specialized professionals to assist in Client representation, who will be supervised by our attorneys. Please be assured, however, that we will inform Client prior to any such engagement, and will ensure quality work will be provided in an economic and efficient manner.

. 4

American Paper Corp.
April 19, 2002
Page 2

Costs incurred by us on Client's behalf for copying, overtime word processing, telephone charges, postage, freight and other matters are billed at cost plus a standard per unit charge for overhead associated with these services.   Statements will be provided monthly.

In connection with this matter, we have agreed to an up-front retainer in the amount of $25,000. If paid by check, the retainer shall be deemed delivered to CTSW only once the retainer check has cleared the drawer's bank. CTSW will bill its initial charges to the retainer amount. Should any credit balance remain after this engagement terminates, we will return such balance to Client.

It is further understood that, in the unlikely event that our fees are not paid in a timely manner, in addition to other action CTSW might take, CTSW may discontinue work in pending matters and withdraw from its representation of Client. Client hereby consents to any such withdrawal and Client's execution of this letter will evidence such consent. CTSW also shall be entitled to any attorney fees and other costs of collection (whether pursued by CTSW's attorneys or otherwise) in the event of non-payment for work done on Client behalf.

In the event of any fee dispute between $1,000 and $50,000 in a civil matter for which Client has retained us, Client shall be entitled to have such dispute submitted to arbitration administered by the Joint Committee of Fee Disputes and Conciliation. Any such arbitration result will be final and binding. New York law will apply should there be any dispute concerning our representation of Client. We also advise Client of the opportunity to submit any fee disputes to a mediator. Mediation generally is a less costly and more streamlined process than either litigation or arbitration, but a mediator's decision is not binding on the parties.

American Paper Corp.
April 19, 2002
Page 3


Please sign this retainer agreement where indicated below and return it and the retainer check to us to indicate that you have read this letter, have had the opportunity to discuss it with us, are authorized to execute this letter on behalf of and bind Client and that this letter accurately reflects our agreement respecting the engagement of our firm by Client. Should you have any questions, please feel free to call me.

We very much appreciate your confidence in us demonstrated by your selection of CTSW and look forward to building a strong and lasting working relationship with you.

Sincerely,

COHEN TAUBER SPIEVACK &
WAGNER, LLP

By: Stephen Wagner

ACCEPTED AND AGREED:
AMERICAN PAPER CORP.

By:

Name: Mehdi Gabaytadeh
Title: President / CEO

12:23 PM
06/30/04
Accrual Basis

# COHEN TAUBER SPIEVACK & WAGNER, LLP
## Customer Balance Detail
### All Transactions

| Type | Date | Num | Account | Class | Amount | Balance |
|------|------|-----|---------|-------|--------|---------|
| **American Paper Corp.** | | | | | | |
| **ATM Mexico** | | | | | | |
| Invoice | 4/14/2004 | 25304 | 1200 · Accounts Re... | Litigation... | 21,493.44 ✓ | 21,493. |
| Invoice | 5/14/2004 | 25772 | 1200 · Accounts Re... | Litigation | 22,607.06 | 44,100. |
| Total ATM Mexico | | | | | 44,100.50 | 44,100.5 |
| **American Paper Corp. - Other** | | | | | | |
| Invoice | 5/15/2002 | 12486 | 1200 · Accounts Re... | Litigation... | 12,582.89 ✓ | 12,582.8 |
| Payment | 6/4/2002 | 2763 | 1200 · Accounts Re... | | -12,582.89 — | 0.0 |
| Invoice | 6/10/2002 | 12570 | 1200 · Accounts Re... | Litigation... | 67,356.47 ✓ | 67,356.4 |
| Payment | 6/27/2002 | | 1200 · Accounts Re... | | -32,000.00 — | 35,356.4 |
| Payment | 7/19/2002 | 2780 | 1200 · Accounts Re... | | -20,000.00 — | 15,356.4 |
| Invoice | 7/19/2002 | 12752 | 1200 · Accounts Re... | Litigation... | 41,615.52 ✓ | 56,971.9 |
| Payment | 8/16/2002 | | 1200 · Accounts Re... | | -50,000.00 — | 6,971.9 |
| Invoice | 8/23/2002 | 12916 | 1200 · Accounts Re... | Litigation... | 97,988.32 ✓ | 104,960.3 |
| Invoice | 9/19/2002 | 13123 | 1200 · Accounts Re... | Litigation... | 70,817.35 ✓ | 175,577.6 |
| Payment | 10/9/2002 | | 1200 · Accounts Re... | | -104,960.31 — | 70,617.3 |
| Invoice | 10/24/2002 | 13259 | 1200 · Accounts Re... | Litigation... | 34,923.48 ✓ | 105,540.8 |
| Invoice | 11/15/2002 | 13368 | 1200 · Accounts Re... | Litigation... | 35,420.07 ✓ | 140,960.9 |
| Invoice | 12/26/2002 | 13513 | 1200 · Accounts Re... | Litigation... | 18,445.29 ✓ | 159,406.1 |
| Payment | 1/7/2003 | 1093 | 1200 · Accounts Re... | | -25,960.90 — | 133,445.2 |
| Invoice | 1/28/2003 | 13703 | 1200 · Accounts Re... | Litigation... | 15,007.08 ✓ | 148,452.37 |
| Payment | 2/24/2003 | | 1200 · Accounts Re... | | -44,666.45 — | 103,795.92 |
| Invoice | 2/25/2003 | 20158 | 1200 · Accounts Re... | Litigation... | 5,032.39 ✓ | 108,828.31 |
| Invoice | 3/12/2003 | 20254 | 1200 · Accounts Re... | Litigation... | 21,449.80 | 130,278.11 |
| Payment | 4/1/2003 | 1165 | 1200 · Accounts Re... | | -27,011.31 | 103,266.80 |
| Invoice | 4/15/2003 | 20522 | 1200 · Accounts Re... | Litigation... | 19,711.43 ✓ | 122,978.23 |
| Payment | 4/22/2003 | 1166 | 1200 · Accounts Re... | | -30,000.00 | 92,978.23 |
| Payment | 5/5/2003 | 1181 | 1200 · Accounts Re... | | -30,000.00 | 62,978.23 |
| Invoice | 5/28/2003 | 21158 | 1200 · Accounts Re... | Litigation... | 43,961.45 ✓ | 106,939.68 |
| Invoice | 6/13/2003 | 21295 | 1200 · Accounts Re... | Litigation... | 13,592.24 ✓ | 120,531.92 |
| Invoice | 7/15/2003 | 21567 | 1200 · Accounts Re... | Litigation... | 14,436.75 ✓ | 134,968.67 |
| Invoice | 8/29/2003 | 22100 | 1200 · Accounts Re... | Litigation... | 6,145.12 ✓ | 141,113.79 |
| Invoice | 9/18/2003 | 22272 | 1200 · Accounts Re... | Litigation... | 8,665.88 ✓ | 149,779.67 |
| Invoice | 10/3/2003 | 22846 | 1200 · Accounts Re... | Litigation... | 9,873.00 ✓ | 159,652.67 |
| Invoice | 10/14/2003 | 22824 | 1200 · Accounts Re... | Litigation... | 403.45 | 160,056.12 |
| Invoice | 11/12/2003 | 23174 | 1200 · Accounts Re... | Litigation... | 6,822.69 ✓ | 166,878.81 |
| Invoice | 12/23/2003 | 23624 | 1200 · Accounts Re... | Litigation... | 3,860.97 | 170,739.78 |
| Invoice | 1/15/2004 | 23873 | 1200 · Accounts Re... | Litigation... | 1,272.31 ✓ | 172,012.09 |
| Payment | 2/5/2004 | | 1200 · Accounts Re... | | -160,056.12 | 11,955.97 |
| Invoice | 2/25/2004 | 24268 | 1200 · Accounts Re... | Litigation... | 544.17 ✓ | 12,500.14 |
| Invoice | 3/17/2004 | 24533 | 1200 · Accounts Re... | Litigation... | 1,487.00 ✓ | 13,987.14 |
| Invoice | 4/14/2004 | 25303 | 1200 · Accounts Re... | Litigation... | 243.50 ✓ | 14,230.64 |
| Invoice | 5/14/2004 | 25771 | 1200 · Accounts Re... | Litigation... | 314.00 ✓ | 14,544.64 |
| Total American Paper Corp. - Other | | | | | 14,544.64 | 14,544.64 |
| Total American Paper Corp. | | | | | 58,645.14 | 58,645.14 |
| **TOTAL** | | | | | 58,645.14 | 58,645.14 |

Compiled for Management Purposes Only

# EXHIBIT 37

214

# MEMO

FROM:     Kelly Young

TO:       Benjamin Brafman, Andrea Zellan & Jennifer Liang

RE:       **MEHDI GABAYZADEH**

DATE:     March 5, 2002

The following summarizes the issues discussed during today's conference call with attorneys Cassondra Joseph, Chris Tracy, Jerry Homsy, Richard Friedman, Jay Fialkoff, Mark Parry, David Hirsch, Mitch Boult and Daniel Stockford.

◆     Ben pointed out that Mehdi is a target of an investigation presently pending in the Eastern District of New York (John Curran is the Assistant United States Attorney in charge) that may result in an indictment. Ben does not want Mehdi to testify in any deposition and if required to do so, upon advice of counsel, Mehdi will invoke his 5th Amendment privilege.

◆     Jay Fialkoff of Moses & Singer has advised of the firm's imminent withdrawal as bankruptcy counsel for Mehdi and that there are fees still owed to them. However, Jay Fialkoff was involved with the commercial adversary proceeding against debtor that he feels should be discontinued without prejudice otherwise, it will compel a counterclaim. Jay thinks it would be a mistake to proceed with this pleading. If so, Mehdi would be required to testify in this proceeding. Cassondra Joseph thought that Ron Gasper (CFO) could testify if required since he is responsible for all the financial records. Jay claims that the debtor will not pay because they feel Mehdi owes them more than they owe him. Mehdi claims they owe him $4 million. Mark Parry of Moses & Singer claimed that the debtor stated "they would go down in flames before paying Mehdi." Jay said that the $3.7 million on the balance sheet is an advance of the bond holders. Mehdi claims that any checks received after November 2, 2001 are owed to him. Ben doesn't think this litigation should go forward. Mehdi wants Jay to finish litigation in this matter but Jay refuses.

◆     Laurie Silverstein is the local counsel in Delaware that Moses & Singer uses and even if Moses & Singer withdraws, they have no objection to Silverstein

215

staying on board.  Silverstein is regarded as a competent attorney.

♦ There was a hearing before a Bankruptcy Judge in Chicago where a motion was made to permit them to serve 2004 notices and the Judge allowed them to go forward.  Mark Parry of Moses & Singer has not returned calls of adversary counsel to schedule depositions.  <u>New bankruptcy counsel must deal with this promptly</u>.

♦ Mehdi has previously testified in the Great American insurance case. Richard Friedman handles this litigation.  **WE NEED A COPY OF THIS TRANSCRIPT.**  It may be possible to receive a copy from Wolf & Samson who was counsel for Great American.  This transcript dealt with issues of whether or not Super American Tissue had any cash or assets because of the $10,733,500 judgment and where certain documents were maintained.

♦ On January 17th there was a Lakeview deposition in context of bankruptcy litigation that took place in an attempt to compel rent payment to certain landlords not in bankruptcy. Apparently, tenants were refusing to pay rent for leases that were not negotiated at arm's length and rents they deemed were not based on fair market values but rather concocted by Mehdi.  In this deposition, Mehdi answered general questions as to who he was and his relationship to the landlords involved.  **WE WILL RECEIVE A COPY OF THIS DEPOSITION FROM MOSES & SINGER.**

♦ In Boise Cascade v. Mehdi Gabayzadeh (U.S. District Court in Oregon), a deposition of  Mehdi has been requested to take place in 60 days or so. Davis Ratrimane is counsel for Mehdi in this case.  <u>We do not know the name of opposing counsel.  We were not provided with the name of this attorney prior to the call.  Accordingly, upon receipt of contact information from Cassondra, we must contact him.</u>

♦ A hearing is scheduled for next Thursday March 14th in Great American v. Super American Tissue before Judge Spatt. Mehdi Gabayzadeh is supposed to be deposed on March 7th.  Richard Friedman is counsel for the corporate entities.  If forced to appear at deposition, Mehdi Gabayzadeh will invoke his 5th Amendment privilege.  If a letter is sent out in advance stating that Mehdi will invoke the 5th in response to all questions, Mehdi Gabayzadeh will unlikely be required to appear.

♦ Ben thinks it best to push for settlements in all matters.  All pleadings should be presented to Ben for his review before submission.

216

◆   If the Actrate matter is settled, then Ampad would be discontinued with prejudice.

◆   Chris Tracy is concerned with the Guaranty case in Chicago re: LaSalle because his Answer is due March 22nd. Although Tracy is friendly with counsel for LaSalle, they weren't compromising in his request for an extension. Mehdi is on the hook for the $145 million LaSalle loan. On February 6th, LaSalle sent a letter stating that he should pay $75 million now and that they'll figure out the details later. Exhibit A of the loan agreement is a rider that states that Mehdi only guarantees a shortfall. With that in mind, Mehdi would then guarantee approximately $19 million. Tracy believes that LaSalle botched up what they claim Mehdi Gabayzadeh owes them. Tracy thought it may be wise to send a letter to LaSalle stating they screwed up under Rule 11. Ben does not think he should go looking for sanctions. Ben wants to make sure that LaSalle doesn't turn out looking like a victim. Tracy wanted to know whether or not to take an aggressive approach. Ben does not think it best to use an aggressive approach if it will make LaSalle crazy. It's also rumored that LaSalle guys are at risk of losing their jobs. Tracy believes there may be two possible technical defenses with respect to the underlying loan agreement and personal guaranty. LaSalle never provided any notice of default on the loan agreement. There was no demand letter sent at that time. The only demand letter on file is one from February 2002. **WE MUST CHECK WITH NICHOLAS KAISER AND SEE IF HE HAS ANY DEMAND LETTERS IN HIS FILES.** Ben said it was okay for Tracy to ask Latham & Watkins to send him copies of any default letters they may have on file. If in fact there was no notice of default, then LaSalle breached their loan agreement to Mehdi. Filing of bankruptcy alone doesn't constitute default. Tracy feels that the 9/9/01 bankruptcy filing may be useful to him in this matter. Tracy would wants Cassondra Joseph to send him any Rule 11 or Due Diligence documents she may have.

◆   There was an earlier deposition in Boston involving American Tissue Mills of Massachusetts claiming that Mehdi ran the company as an "alter ego." The Supreme Court case Best Foods (phonetic) stands for a proposition that Mehdi should be personally insulated from liability unless they can pierce the corporate veil and show that Mehdi and corporation are alter egos. **(Jennifer spoke with Slavitt after the call, he will send Mehdi's earlier deposition. Jennifer also advised him that Mehdi will invoke the 5th with respect to further depositions and that we must review all submissions.)**

- ◆ Having Chris Clifford testify at any deposition would be good for the criminal defense.

- ◆ Ben does not think it is wise to have Kaiser testify at this point requiring him to waive his attorney-client privilege and reveal information that may hurt Mehdi.

- ◆ Chris Tracy thinks it would be best for us to pull out all documents relevant to American Tissue and have them inventoried, bates stamped and categorized. No documents are presently on hand and may possibly be acquired through bankruptcy discovery.

- ◆ Joe D'Amico of Price Waterhouse believes that since the "bank is so busy fighting, Mehdi will probably walk away scott free." This is nothing but an opinion and should hold no probative value.

- ◆ Cassondra Joseph does not believe that Price Waterhouse even issued a final report of its audit. Therefore, we only possess a draft report. Nicholas Kaiser will likely have the final report, if ever generated.

- ◆ Ben thinks it would be good for him to meet with Rich Friedman to discuss the case.

- ◆ Ben would like to interview the following: Nick Galante, Fran Robinson, Rob Sudan, Ron Gasper and Sina Kohen.

# EXHIBIT 38

# MEMO

FROM: Bob

TO: Ben

RE: Mehdi Update

DATE: June 17, 2003

ATTORNEY-CLIENT WORK PRODUCT
PRIVILEGED & CONFIDENTIAL

---

Further to my memo of June 5, 2003, I spoke with Warren Feldman concerning the handwritten note (attached) we believed was written by his client, John Parsons. Warren was aware of a handwritten document like this, but could not recall the specifics, so I faxed it to him. Warren called me today and indicated that it was not in Parsons' handwriting; that to the best of his client's ability to guess, it was written by Brendan McDonald. Staying in the area of surmise, Parsons speculates this was drafted the Labor Day weekend at ATI after Lorenz spilled his guts. Parsons believes this is McDonald's notes of what they were told, drafted either that weekend, or "in the immediate aftermath."

Let's discuss the pros and cons of sending the document to Barry Bohrer. While we would certainly benefit from Bohrer's insight, if McDonald ends up pleading and cooperating we would have to trust Barry not to share our interest in this document in his dealings with prosecutors.

7-5-01

Irregularities

COPY

① Inventory shortfall in physical count
        ↳ beg. Feb. '00

② Doctored support given to AA
        ↳ freight cost, corrupted, poly.
                                        ↳ in-transit tra
③ Ed constructed everyone in acctg department
    to perpetrate fraud; EVERYTHING runs through him fr

CURRENT YEAR

* "BILL & HOLD" ↳ FILM Q3?

* Accounts Payable trial balance irregularities
        ↳ 15/20 MILLION

* Held checks not accounted for

* Memphis & AFA fraudulently changed numbers for Q's
    BANK

* Mexican banks

* AmPAD pmts. to vendors on behalf of ATC

CONFIDENTIAL AND PROPRIETARY

194/18   225

# EXHIBIT 39

# C | T | S | W

### COHEN TAUBER SPIEVACK & WAGNER LLP

Stephen Wagner

direct:   212-381-8732
e-mail:   swagner@ctswlaw.com

October 16, 2003

**Sent By Facsimile**

Nourollah Elghanayan
American Paper Corporation
300 Rabro Drive
Hauppauge, NY 11788

Re:  Pheasant LLC

Dear Nourollah:

This letter will confirm the following:

1.  By letter dated October 14, 2003, you, on behalf of Pheasant LLC, instructed this firm to transfer $157,846 to the account of Ali Amzad, Account # 946 166 5831.

2.  Pursuant to the aforesaid instructions, this firm transferred that amount to Mr. Amzad's account on October 15, 2003.

3.  This morning, you informed us that your instruction with regard to the transferring of funds to Mr. Amzad was erroneous.

4.  You have instructed us to attempt to retrieve the amount transferred to Mr. Amzad's account.

Upon our receipt of this letter signed by you where indicated below, we will attempt to retrieve the funds previously transferred to Mr. Amzad's account.

Sincerely,

Stephen Wagner

Pheasant, LLC

By:

Nourollah Elghanayan, as Manager
MEHDI GABAYZADEH   AS MANAGER

420 Lexington Avenue  |  New York, New York 10170  |  Phone: 212.586.5800  |  Fax: 212.586.5095  |  www.ctswlaw.com

# C | T | S | W
### COHEN TAUBER SPIEVACK & WAGNER LLP

Stephen Wagner

**direct:** 212-381-8732
**e-mail:** swagner@ctswlaw.com

October 16, 2003

**<u>Sent By Facsimile</u>**

Nourollah Elghanayan
American Paper Corporation
300 Rabro Drive
Hauppauge, NY 11788

Re:  Pheasant LLC

Dear Nourollah:

This letter will confirm the following:

1.  By letter dated October 14, 2003, you, on behalf of Pheasant LLC, instructed this firm to transfer $157,846 to the account of Ali Amzad, Account # 946 166 5831.

2.  Pursuant to the aforesaid instructions, this firm transferred that amount to Mr. Amzad's account on October 15, 2003.

3.  This morning, you informed us that your instruction with regard to the transferring of funds to Mr. Amzad was erroneous.

4.  You have instructed us to attempt to retrieve the amount transferred to Mr. Amzad's account.

Upon our receipt of this letter signed by you where indicated below, we will attempt to retrieve the funds previously transferred to Mr. Amzad's account.

Sincerely,

Stephen Wagner

Pheasant, LLC

By:  _____
    Nourollah Elghanayan, as Manager

# EXHIBIT 40

John Gabayzadeh
40 Cuttermill Road Suite 502
Great Neck NY 11021
Telephone: 516 829 3330 ext 104
Fax: 516 829 3993
Email: jgabayzadeh@premierpaperproducts.com

August 12, 2004
Deborah Schwartz
152 West 57th Street 24th Floor
New York NY
Fax # 212 582 4700
Email:

Re: Statement

Dear Mrs. Schwartz

We are currently in litigation with National Union Fire Insurance Company of Pittsburgh, PA regarding the Directors and Officers policy. I am requesting from you if you would be able to send me via fax or email a statement of what was paid to your lawfirm, and how much is owed to your lawfirm in the past for work you have done for Mehdi Gabayzadeh, and his related companies from September 10, 2001 up to today. I would also like for you to include the $75,000 that you have received from Pheasant LLC.

We will be going into Arbitration within the next three months with National Union and I am hopeful that we will be able to recover and pay to your firm whatever is outstanding. So please send to either jgabayzadeh@premierpaperproducts.com, or fax 516 829 3993 the statement of what was paid from day 1 and how much is still outstanding. Thanks

John Gabayzadeh

208

DEBORAH A. SCHWARTZ
COUNSELOR AT LAW
152 WEST 57TH STREET, 24TH FLOOR
NEW YORK, NEW YORK 10019
(212) 582-0200

———

FACSIMILE
(212) 582-4700

September 9, 2004

John Gabayzadeh
40 Cuttermill Road Suite 502
Great Neck, New York 11021

Re: Fees Received from American Paper Corp.

Dear Mr. Gabayzadeh:

In answer to your inquiry, please be advised that I received the following fees from American Paper Corp, Medhi Gabayzadeh or his related companies,:

| | |
|---|---|
| 4/13/02 | $10,000.00 |
| 7/9/02 | $ 3306.09 |
| 9/5/02 | $ 1237.50 |
| 10/24/02 | $ 962.50 |
| 11/4/02 | $ 5000.00 |
| 3/18/03 | $ 5000.00 |
| 4/7/03 | $ 20,000.00 |
| 5/12/03 | $ 25,307.41 |
| 6/10/03 | $ 25,056.00. |

Very truly yours,

Deborah A. Schwartz

John Gabayzadeh
Five Pheasant Run
Great Neck NY 11024

September 16, 2004

Dear Mrs. Shwartz,

First of all happy and healthy new year to you and your family. I did receive your fax
with the information I had requested from you. Although there was only one payment
that was missing.

There was a payment made from one of our companies, 'Pheasant LLC', in the amount of
$125,000 regarding Amzad Ali's case. I do understand that you had paid $50,000 to Ben
Brafmans account and you had paid $75,000 to yourself. The money was in escrow
account. Please provide me a copy of the check or wire transfer to yourself and Ben
Brafman. Please fax it to me at 516 829 3993. Thanks

John Gabayzadeh

# PREMIER PAPER PRODUCTS LLC
PAPER TO PRODUCTS TO PEOPLE

TEL: (516) 829 3330 FAX (516) 829 3993 · 40 CUTTERMILL ROAD SUITE 502 GREAT NECK NY 11021

TO: Mrs. Shwartz
FAX: 212 582 4700
PHONE:
RE:

FROM: John Gabayzadeh
DATE: September 16, 2004
PAGES:
CC:

**NOTES:**

Please see the attached. Thanks

---

## TX   RESULT   REPORT

NAME:
TEL :6313429777
DATE:SEP.16'2004 11:35

| SESSION | FUNCTION | NO. | DESTINATION  STATION | DATE | TIME | PAGE | DURATION | MODE | RESULT |
|---------|----------|-----|----------------------|------|------|------|----------|------|--------|
| 5048 | TX | 01 | 12125824700 | SEP.16 | 11:34 | 002 | 00H00'34" | ECM | OK |

2<sup>11</sup>

5 Pheasant Run
Great Neck, NY 11024

September 24, 2004

Deborah Schwartz, Attorney
24th Floor
152 West 57th Street
New York, NY 10019

Dear Debbie,

Regarding my letter September 16th attached, I need this information as soon as possible.

Please confirm how paid to yourself $75,000 and how you paid $50,000 to Ben Braffman.

Thank you,

Mehdi Gabayzadeh



```
         ) STATES
    POSTAL SERVICE
  ***** WELCOME TO *****
      GREAT NECK MPO
 SAVE A TRIP TO THE POST OFFICE
  SHIP FROM HOME OR OFFICE
      USE CLICK-N-SHIP
    USPS.COM/ CLICKNSHIP
     09/24/04 03:29PM

Store  USPS        Trans    91
Wkstn sys5004    Cashier  KSYOXH
Cashier's Name    CAROL
Stock Unit Id     SIACC
PO Phone Number   516-482-5010
USPS #            3568880110

 1. First Class           4.42
    Destination:   10019
    Weight:        1.00 oz.
    Postage Type:  PVI
    Total Cost:    4.42
    Base Rate:     0.37
          SERVICES
    Certified Mail        2.30
      70041160000231701939
    Rtn Recpt (Green Card)  1.75

     otal                 4.42
                          4.42

     e Due               20.00

                         15.58

Number of Items Sold: 1
```

        gain!