# BRAFMAN & ROSS, P

767 THIRD AVENUE, 26TH FLO
NEW YORK, NEW YORK 1001
TEL.(212)750-7800
FAX.(212)750-3906

# Exhibit "H"

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: | FAX NUMBER: |
| MEHDI GABAYZADEH | (631) 232-1466 |
| FROM: | |
| BENJAMIN BRAFMAN | (212) 750-3906 |
| DATE: | TOTAL NO. OF PAGES INCLUDING COVER: |
| APRIL 15, 2004 | 3 |
| RE: | |
| **PERSONAL & CONFIDENTIAL** | |
| CC: | |

☐ URGENT          ☐ FOR REVIEW          ☐ PLEASE COMMENT          ☐ PLEASE REPLY

NOTES/COMMENTS:

## PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# BRAFMAN & ROSS, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE

26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN
CHARLES A. ROSS

MARK M. BAKER
OF COUNSEL

CHRISTOPHER L. PADURANO
JENNIFER A. LIANG
MELINDA SARAFA
ANDREA ZELLAN

April 15, 2004

<u>VIA TELEFAX (631) 232-1466</u>
<u>PERSONAL & CONFIDENTIAL</u>
Mr. Mehdi Gabayzadeh
President and Chief Executive Officer
American Paper Corporation
300 Rabro Drive
Hauppauge, New York 11788

## RE: UNITED STATES v. MEHDI GABAYZADEH 03 CR 1162 (JS)

Dear Mr. Gabayzadeh:

Following our meeting several days ago when you requested that we no longer continue to represent you I recommended several lawyers that you should interview and consider retaining as counsel of record on your behalf in this case.

Thereafter, at your request I met with you and your son on Thursday, April 8, 2004, at which time you requested that I remain as trial counsel in this case with the understanding that you would retain the law firm of Perini and Hoerger to act as co-counsel. It was your request that Perini and Hoerger would be responsible for preparing this case for trial and that they would be responsible for the preparation and filing of all pre-trial motions on your behalf. You agreed that the full balance of fees due this firm would be paid in full, with any fees to be paid to Perini and Hoerger considered separate and apart from any of the fees to be paid to this firm in accordance with the terms of our revised retainer letter.

At that same meeting, you assured me that you would be able to pay the full fees due this firm within a very short time because you had retained counsel to represent you in a case against your insurance carrier for legal fees to cover your defense of this case. You assured me that the lawyers you had retained had

**BRAFMAN & ROSS, P.C.**

assured you that your insurance claim would be covered and that any such claim would be resolved in a matter of several **weeks**. At our meeting you provided me with a telephone number for Gerald Oshinsky, Esq. the attorney who would be representing you in your insurance claim and you suggested that I call Mr. Oshinsky.

I have now spoken with Mr. Oshinsky, who, contrary to your representations advised me of much different facts. Thus, although Mr. Oshinsky did confirm that he met with you to discuss the prospect of representing you in a claim against your insurance company, Mr. Oshinsky told me that he had not yet been retained and also advised me that he wanted a $200,000.00 advance retainer to cover the legal fees that you would incur with his firm including the costs of arbitration that he wanted to have in an escrow account prior to initiating formal proceedings. In addition, Mr. Oshinsky advised me that while he agreed that you **might** indeed have a viable claim, he did not give me any reason to feel certain that at the end of the proceedings you would prevail. Perhaps most troubling however was Mr. Oshinsky's prediction, that even if successful, an arbitration would in his judgment take approximately five **months** to resolve, assuming that it was initiated immediately.

In view of the difficulty that I anticipate you will have in guaranteeing the fees that will be due this firm and in view of the willingness of the Perini and Hoerger firm to represent you competently and effectively in this matter, I think should arrange for a formal substitution of that firm now. In view of the fact that a trial of your indictment has not yet even been scheduled and will not be held for many months, there is more than ample time for your new attorneys to learn the case. We will of course cooperate fully to ensure an orderly transition and substitution of counsel.

Please be certain that your new attorneys are in Court on April 23, 2004, when a status conference on your case has been scheduled.

Thank you for your courtesy in connection with this matter.

Very truly yours,

Benjamin Brafman

**From:** John La Perla
**Date:** Mon, 31 Aug 2009 19:42:43 -0400
**To:** <jgabayzadeh@tmo.blackberry.net>
**Subject:** golden investigation

Exhibit "I"

John,

Attached is a memo describing the results of a conversation I had with Special Agent Michael Schuler of the Federal Bureau of Investigation concerning Bill Golden.


John La Perla
Renaissance Associates, Ltd
1325 Franklin Avenue  Suite 225
Garden City, NY  11530
Telephone (516) 742-9125
Mobile    (516) 805-3557
email jlaperla@renusa.com



August 31, 2009

John Gabayzadeh

## <u>Re</u>: <u>Bill Golden & Legal Loop Investigation & Referral</u>

On August 18, 2009, I participated in a telephone call with Michael Schuler, a Supervisory Special Agent with the FBI assigned to the Richmond, Virginia Field Office. The purpose of the call was a follow up to the criminal referral we provided to SA Schuler and other FBI Agents on July 22, 2009, concerning Bill Golden.

SA Schuler returned my call and advised the FBI was opening a file for the purpose of initiating a criminal inquiry into the activities of Bill Golden as set forth in our initial referral in July. Agent Schuler further advised the case would be investigated from their Charlottesville, Virginia office, which is part of the Richmond Division and closer to where Golden resides.

He further advised I would be hearing from an agent within the next several weeks about the results of my investigation and possibly interviewing both you and myself. He said I would mostly probably not hear until after the Labor Day Holiday at the earliest.

John La Perla



**PRIVILEGED AND CONFIDENTIAL**

<u>VIA E-MAIL</u>

November 17, 2008

Raymond Perini
Perini & Hoerger
Attorneys at Law
1770 Motor Parkway, Suite 300
Hauppauge, New York 11749

RE: **LegalLoop, LLC**

Dear Perini:

Thank you for selecting Renaissance Associates, Ltd.   This letter confirms our agreement to provide services to you, which shall be governed by the terms and conditions set forth below.

<u>Scope of Services</u>

Your firm has agreed to retain Renaissance Associates, Ltd. ("Renaissance") to provide investigative services in relation to the above referenced subject.  In connection with this engagement, it is understood and agreed that Renaissance will conduct an investigation and provide other investigative services as mutually agreed upon ("the Engagement"). The purpose of the engagement is to determine if the above referenced entity is operating a fraudulent scheme and if so, develop information that can form the basis for a referral to the appropriate prosecutor's office. The investigation will initially involve a background inquiry of individuals involved with LegalLoop, as well as related entities. If warranted, the investigation will be expanded to include witness interviews, surveillance, as well as identifying additional victims.

<u>Fees and Charges</u>

While your firm has retained our services, it is expressly understood that your client's family members ("Gabayzadeh") are solely responsible for payment of our services. Renaissance works on a time and materials basis.  For investigative services, our billing rate is $250 per hour.

---

Raymond Perini
November 17, 2008
Page Two

In addition to the foregoing hourly rate charge, the client will be responsible for, and agrees to pay, all reasonable expenses incurred in connection with the Engagement, which include, but are not limited to, transportation (public transportation, mileage at $0.65 per mile), copies or printed documents (at $.10 per page), overnight delivery charges, database searches, tolls and airfare. As information, please note that private investigative firms are required by New York State to collect sales tax (8.625%) from their clients for services rendered.

We will require a retainer in the amount of $7,500.00 prior to starting work. It is understood that this amount is to be deposited into your firm's account by the client and we will bill against that amount. If necessary, the retainer will be replenished as needed and agreed to by all parties. Invoices for fees and expenses will be produced monthly or at the completion of the engagement, whichever is earlier. Payment is due promptly upon receipt. Client agrees that all amounts stated in our invoice will be presumed to be accurate unless the client or his attorney raises an objection thereto within fifteen (15) days of receipt thereof. Renaissance reserves the right to terminate services at any time if the client fails to pay Renaissance's invoices in a timely manner. If it becomes necessary for Renaissance to engage third parties to collect any unpaid or overdue invoices, the client shall reimburse Renaissance for the costs of engaging such third parties, including reasonable attorney's fees, in addition to the actual amounts owed to Renaissance for services performed.

The Client and his attorney agree that this Engagement shall be governed by the laws of the State of New York, without regard to the principles of conflicts of law. Any dispute arising out of or in any manner relating to this Engagement shall be brought only in the courts, state and federal, in the State of New York.

Engagement Terms

If any person or entity requests or subpoenas any information or material relating to this Engagement, which is in the custody or control of Renaissance or any of our agents or representatives, you (legal counsel) will be provided written notice of such subpoena in advance of Renaissance's compliance therewith, so that you may take whatever legal action you deem appropriate. If you do not obtain and deliver to Renaissance a protective order by the due date of the subpoena, Renaissance will comply with the subpoena, but will comply in a way as to limit, to the extent possible, the Confidential Information being disclosed.

The client agrees to defend, indemnify and hold harmless Renaissance and its officers, directors, employees and agents from all claims, damages and costs (including reasonable attorney's fees) relating to, arising out of or in connection with the work performed, except for claims that are based upon actions by Renaissance, its officers, employees and agents that are adjudicated to constitute willful misconduct or negligence.

Raymond Perini
November 17, 2008
Page Three

You and the client acknowledge that Renaissance does not guaranty any particular result or outcome from the provision of the services contemplated by this Engagement Letter and agrees that, except as expressly stated herein, Renaissance makes no warranties, express or implied, concerning such services including, by way of example and not limitation, any warranty or merchantability or fitness for a particular purpose.

Further, you and the client agree that in no event shall Renaissance be liable for any indirect, incidental, special or consequential damages relating to, arising out of or in connection with its performance or failure to perform under this Engagement Letter and that its aggregate liability under this Engagement Letter shall not exceed the total amount of fees that you have paid Renaissance under this Engagement Letter.

<u>Confidentiality</u>

Renaissance acknowledges that the purpose of the Engagement is to enable you to render legal advice to a client and that; therefore, Renaissance's communications with you and the client, Renaissance's work product, and all information and data received from you or the client are covered by the attorney-client and/or attorney work product privileges.  Accordingly, Renaissance will maintain as confidential all information and data it receives from you or the client and will not disclose such information and data (the "Confidential Information") to any third party without your prior written consent, subject to the provision regarding subpoenas.


Very truly yours,

Renaissance Associates, Ltd.


BY: _____
         John La Perla

Agreed and accepted


BY: _____                _____
         Raymond Perini, for                              Date
         Perini & Hoerger



_____                        _____
         Client                                                    Date


3

# R<small>A</small> RENAISSANCE
### A S S O C I A T E S, L T D.

Investigations and Computer Forensics

## John La Perla

1325 Franklin Ave.
Suite 225
Garden City, NY 11530
(516) 742-9125
jlaperla@renusa.com

45 Park Place South
Suite 251
Morristown, NJ 07960
(973) 828-6705
www.renusa.com

**Exhibit "J"**

GABAYZADEH, MEHDI

INMATE VISITOR LIST

INMATE COPY

VISITING LIST FOR INMATE: GABAYZADEH, MEHDI
REGISTER NUMBER: 68419-053
UNIT: UNIT 6

HOERGER, MAUREEN S.
1770 MOTOR PARKWAY
HAUPPAUGE, NEW YORK 11749
UNITED STATES OF AMERICA

Inmate Visitor
PHONE: 631-232-2224

ATTORNEY
APPROVED: 08-12-2009 09:00

PERINI, RAYMOND G.
1770 MOTOR PARKWAY
HAUPPAUGE, NEW YORK 11749
UNITED STATES OF AMERICA

Inmate Visitor
PHONE: 631-232-2224

ATTORNEY
APPROVED: 08-12-2009 08:58

# PERINI & HOERGER

### ATTORNEYS AT LAW
### 1770 MOTOR PARKWAY
### SUITE 300
### HAUPPAUGE, NEW YORK 11749

# Exhibit "K"

RAYMOND G. PERINI
MAUREEN S. HOERGER

(631) 232-2224
FAX (631) 232-2344

MICHAEL M. McCLELLAN
OF COUNSEL

August 20, 2009

Mehdi Gabayzadeh Register # 68419-053
FCI FORT DIX
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2000
FORT DIX, NJ 08640

Dear Mehdi:

In follow up to our meeting of last Wednesday, I am going to summarize the status of our representation.

You have told us that you intend to continue the civil lawsuit concerning your previous representation by MR. Brafman's firm.

We have advised you that it is incompatible with us continuing to represent you on the matter we have pending for two reasons. First, we are conflicted out of the case and are going to have to withdraw for the reasons we described for you in detail at our meeting. Suffice it to say here that we can not testify adversely to you in one forum and advocate for you in another.

In addition, we discussed the incompatibility of continuing this law suit while attempting to pursue the matter we have with you. You acknowledged to us that you understood the considerations and concerns we had, but despite the fact that this may totally terminate any further pursuit of our matter, you had made a firm determination to pursue the Brafman lawsuit in any and all events. I think the recently discovered fact, which we relayed to John regarding the defendant's deposing government witnesses will conclusively put an end to any further pursuit of our matter.

You also asked us to suggest another criminal law firm to replace us which would not be conflicted out. As you have previously met with Bradley Simon of Simon and Associates I would suggest you might want to send your son John to discuss the matter with him.

Mr. Simon may be reached at (212) 332-8900, 30 Rockefeller Center, 42 Floor, New York, New York 10112.

As you are aware Mr. Simon is a former US Attorney in this district who would be quite capable to advocate for you in the matter upon which we represent you. He also knows and works well with Mr. LaPerla.

We will stay in place until you obtain new counsel and will assist them in learning the status of the matter. However, we are merely acting in the capacity of care taker and will be performing no legal work.

Beyond that you should consider that for all practical purposes we have resigned from your case and our representation is at an end.  We will direct any further contact from the other party to our case to your new attorney so you must act expeditiously in securing one.

If I have misstated any of our mutual understandings in this matter, please write me so we can resolve it. Good luck in your future endeavors.

Sincerely,

PERINI & HOERGER

*Maureen S. Hoerger*

Maureen S. Hoerger

MSH:lsr

Exhibit "L"

**From:** Benjamin Brafman <BBrafman@braflaw.com>
**Date:** July 10, 2009 4:17:11 PM EDT
**To:** nnili@mac.com
**Cc:** perinihoerger@aol.com, perinihoerger@aol.com
**Subject:** Mehdi

Please forward your current address where you would prefer to accept formal service. I am sorry to have to involve you but your truthful sworn testimony will be part of the proof we offer to demonstrate that the allegations in Mehdi's lawsuit are frivolous and a complete fabrication.

If you are represented by counsel please let me know and I will communicate directly with your lawyer from this day forward. In fact, it would make sense for you to have your own counsel as we proceed, because some of the legal issues that you will have to confront will require you to confer with independent experienced civil and quite possibly criminal defense counsel.

Please understand that Mehdi's attorneys Ray Perrini and Maureen Hoerger will not be able to represent you, or Mehdi for that matter, as they too will be major witnesses in this case against Mehdi and will have an ethical conflict that may prevent them from continuing to represent Mehdi in any matter if this litigation continues. I have spoken to them about this issue and they fully understand that they will be witnesses, as they can clearly establish the inherent falsity of Mehdi's basic claims

Unfortunately, some of what I will have to prove in order to have Mehdi's lawsuit dismissed will by necessity involve you personally in the litigation and investigation that will follow and accordingly, it would make sense for you to have counsel whether you remain a witness or become a defendant.

While I do not hold you primarily responsible for the fraudulent litigation Mehdi has intiated, you and I both know that your truthful testimony will help expose the false premise of his claims as it was you for example who begged me to come back in the case for sentencing and it is you who will also confirm certain facts which upon information and belief, Mehdi's son John intends to deny even though he mus be willing to lie under oath in order to do so. That will be his choice and you will of course have to make your own choice. That is why you may benefit

from the advice of an independent , experienced lawyer.

We have no choice but to bring you personally into the litigation. Its that simple. You know the absolute truth about certain issues and you will have an opportunity to answer certain questions under oath. All we ask is for the truth.

As a courtesy to you, I wanted to give you an opportunity to provide me with the name of your attorney or an address for you that will create the least amount of embarrassment when you are served, subpoenaed or interviewed.

If I do not hear from you within 10 days, we will use the home and business addresses in our file or have our investigators locate your current addresses if the old ones are no longer correct.

Thank you in advance for your cooperation. I always found you personally to be honorable and accordingly, expect that you will provide completely truthful information when questioned, even if doing so undermines the viability of Mehdi's false claims. I doubt that you would even consider committing perjury for Mehdi even though I know you love him and feel sorry for him. I feel sorry for him too but he has left all concerned with no choice but to set the record straight and expose his lawsuit for the fraud everyone knows it to be.
Ben Brafman

-----------------------------------------
Benjamin Brafman, Esq.
Brafman & Associates, P.C.
767 Third Avenue, 26th Floor
New York, NY 10017
(212) 750-7800 - office
(212) 750-3906 - fax
Bbrafman@braflaw.com

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by attorney-client privilege or work product protection. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

**From:** "Benjamin Brafman"
**Date:** Sun, 12 Jul 2009 19:50:00 -0400
**To:** <Queengabaz@aol.com>
**Subject:** Fw: Mehdi

# Exhibit "M"

I hope this email finds you well.
I am truly sorry that I will have to involve you in the litigation that your father has initiated, but I have no choice.

As you will recall , I met with you, your mother and John at my office,  before agreeing to return as your father's attorney after he was convicted at a trial where he was represented by Ray Perini and Maureen Hoerger.

Indeed, it was the eloquent and very moving request made by you and your mother in John's presence, that finally caused me to come back into the case as co-counsel for sentencing. At that meeting, we also discussed the long history of your father's professional relationship with this firm, facts that are now at the heart of the lawsuit your father has filed against me and others. Even if I did not want to involve you, my attorneys who were retained by my insurance carrier are insisting that I provide them with current addresses for all witnesses and or defendants. All we will insist on is that you testify truthfully

As a courtesy, I am asking you to provide me with an address where you and your mother will accept service of legal pleadings and or subpoenas so that we can hopefully minimize the inconvenience to everyone.

I am copying you with an email that I previously sent to Nima that is self explanatory. In it I suggest that if he/you have counsel, to please let me know and I will communicate directly with them. I also explain why Ray and Maureen may not be able to guide you in this case because they too will be principal witnesses.

Should you have any questions, please put them in writing and I will do my best to respond.

Ben Brafman

----------------------------------------
Benjamin Brafman, Esq.
Brafman & Associates, P.C.
767 Third Avenue, 26th Floor
New York, NY 10017
(212) 750-7800 - office
(212) 750-3906 - fax

# BRAFMAN & ROSS, P.C.

### 767 THIRD AVENUE, 26TH FLOOR
### NEW YORK, NEW YORK 10017
### TEL.(212)750-7800
### FAX.(212)750-3906

# Exhibit "N"

---

## FACSIMILE TRANSMITTAL SHEET

| | | |
|---|---|---|
| TO:<br>Mr. Mehdi Gabayzadeh | FAX NUMBER:<br>(631) 342-9777 | |
| FROM:<br>Benjamin Braftnan | | |
| DATE:<br>March 13, 2002 | TOTAL NO. OF PAGES INCLUDING COVER:<br>6 | |
| RE:<br>Personal and Confidential | | |
| CC: | | |

☐ URGENT          ☐ FOR REVIEW          ☐ PLEASE COMMENT          ☐ PLEASE REPLY

NOTES/COMMENTS:

## PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# BRAFMAN & ROSS, P.C.

### ATTORNEYS AT LAW

767 THIRD AVENUE

26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN

CHARLES A. ROSS

MARK M. BAKER
OF COUNSEL

JENNIFER A. LIANG

MELINDA SARAFA

ANDREA ZELLAN

March 13, 2002

**VIA FAX (631) 342-9777**

<u>**PERSONAL & CONFIDENTIAL**</u>

Mr. Mehdi Gabayzadeh

President and Chief Executive Officer

American Paper Corporation

300 Rabro Drive

Hauppauge, New York 11788

Dear Mehdi:

Several weeks ago you retained this firm to represent you in connection with a formal criminal investigation that is presently being conducted by the United States Attorney's Office for the Eastern District of New York. Although no formal charges have been filed against you in connection with that inquiry you have been formally notified through counsel that you are indeed a principal "target" of that inquiry which among other matters focuses on various business related financial transactions involving American Tissue Inc. and related entities.

Soon after this firm was retained, it became obvious to me that in addition to the investigation being conducted by the United States Attorney's Office you and various companies you are associated with were also embroiled in numerous civil litigations in various jurisdictions as well as a formal bankruptcy proceeding. After meeting with you and your in-house General Counsel Cassondra Joseph it became obvious that a discussion among the various attorneys currently representing you was needed in order for everyone involved in these litigations to understand what was happening in connection with the criminal investigation. I also wanted to ensure that no one acting on your behalf did anything to unwittingly compromise your ability to defend the criminal case or in any way compromise your ability to lawfully and properly invoke your Fifth Amendment privilege against self-incrimination in the event that you were required to testify in any proceeding.

## BRAFMAN & ROSS, P.C.

Accordingly, I scheduled the first of two conference calls among the lawyers involved in your representation and tried my best to make several points <u>very</u> clear.

The most important point I made in those conferences was that there was to be no formal submission in any proceeding without clearing the submission with me. I stressed how important it was that you not participate in any depositions where you would be required to testify under oath and that no sworn Affidavits were to be submitted on your behalf. Included on both of the conference calls where these concerns were discussed was Richard Friedman, Esq. one of the lawyers currently representing you in several pending litigations and your in-house General Counsel Ms. Joseph.

Because of those two conference calls and the additional discussions I had with you and Cassondra Joseph, I was stunned to learn at approximately 7pm on Tuesday evening March 12, 2002, that a sworn Affidavit signed by you had been filed by Mr. Friedman the <u>previous</u> day in the case of **KOPLIK v. MEHDI GABAYZADEH AND SUPER AMERICAN TISSUE INC.**, a litigation pending in the Supreme Court of New York County and that a second Affidavit had been prepared for your signature and was scheduled to be filed by Mr. Friedman that very evening in a litigation entitled **WASHINGTON MUTUAL BANK v. 300 RABRO DRIVE LLC**.

In a conversation with Mr. Friedman on Tuesday evening, he defended the filing of the <u>Koplik</u> Affidavit and he insisted on filing the Washington Mutual Affidavit absent your personal instructions that he not do so. Mr. Friedman further informed me that Ms. Joseph was aware of both Affidavits and had approved them for filing.

As a result of my conversation with Mr. Friedman I am concerned that he and Ms. Joseph may not understand the gravity of the case that is presently being mounted against you by the Eastern District of New York. Accordingly, I felt it was <u>necessary to write to you on this subject and to copy Mr. Friedman and Ms. Joseph with this letter so that there is absolutely no misunderstanding of how serious I am about this issue.</u> So that it is <u>absolutely clear</u>, let me once again explain to all concerned in <u>writing</u>, so that my position is on record and so that all of the lawyers fully understand my position and my concern.

As I have explained to you and to them, the United States Attorney for the Eastern District of New York intends to prosecute you in the near future and to name you as a defendant in a massive criminal indictment alleging a widespread fraud involving more than a $100 million dollar loss. While the specific charges have not yet been formulated, a fraud alleging more than a $100 million in loss, can expose those involved to a <u>substantial prison sentence</u> and extraordinary monetary

2

## BRAFMAN & ROSS, P.C.

<u>penalties.</u>

I tell you this <u>not</u> to frighten you, but so that everyone, including Cassondra Joseph and Richard Friedman has a complete understanding of just how serious the criminal case is and what extraordinary personal exposure you may have in that forum.

In addition to the criminal investigation there is also a bankruptcy proceeding pending as well as numerous civil litigations. In some of those proceedings, allegations of fraud and other levels of deceit are either specifically alleged or implied. Because of the vast array of inter-locking corporate entities that you have been involved with during the relevant time period many of the litigations that relate to a specific, isolated transaction may nevertheless impact on all of the cases that surround you including the criminal case that will soon be filed. Accordingly, it is critical that **nothing** be allowed to happen in any of the pending proceedings that will either incriminate you or serve to compromise your ability to defend yourself in the criminal case, <u>or</u> compromise your ability to invoke your Fifth Amendment privilege against self-incrimination at a later point in time should you choose to do so.

<u>Please keep in mind that if a massive fraud indictment is filed against you</u>, it may as a practical matter make it impossible for you to defend the civil litigations until a resolution of the criminal charges has been finalized. Accordingly, it makes no sense whatsoever to possibly compromise the criminal case by taking action in a civil case that may in the final analysis be of little practical consequence. Indeed, the viability of being able to defend any of the civil litigations is quite difficult to envision once the criminal charges are announced.

In addition to my concern that any Affidavit filed on your behalf may tend to directly incriminate you, it can also be used as a "link" in a chain of evidence that is ultimately used to incriminate you. We are also concerned that you not be deemed to have "waived" your Fifth Amendment privilege against self-incrimination by openly discussing certain issues or subject matters in an Affidavit which could then make it difficult for you to later seek to invoke your Fifth Amendment on those same or related issues.

Please understand that once served, your Affidavit is deemed to be a personal "admission" by you and can be offered into evidence in a criminal trial as if you were to acknowledge and fully admit the facts contained therein. Under normal circumstances in a criminal prosecution, a prosecutor must prove someone's guilt beyond a reasonable doubt and must do so by evidence that is

3

BRAFMAN & ROSS, P.C.

admissible and generally subject to cross-examination. Thus, in most cases a prosecutor must call a witness who is then subject to cross-examination by your attorney, who may be able to skillfully undermine the impact of that testimony or through cross-examination demonstrate its lack of trustworthiness. When you file an Affidavit in which you "admit" certain facts, there is no cross-examination as to those facts and the Affidavit is simply admitted against you. Please understand that in this case, Affidavits signed by you can in my judgment cut the heart out of many reasonable defenses that we may later seek to offer on your behalf.

Thus, please note, that a primary focus of the Government's criminal investigation is the allegation that you fraudulently violated the terms of your loan agreement with LaSalle Bank. As I read the Koplik Affidavit that was prepared for your signature without my knowledge and against my specific instructions, it appears that you "confirm" a separate loan between Koplik and ATI during the relevant time period. While I cannot now say that Koplik is or is not one of the customers whose invoices were submitted to LaSalle during the period in question, the Affidavit is damaging in that it casts you in the position of a central player in negotiating loan agreements and in working out complicated financial agreements at a time when controversy and litigation is swirling around you and ATI. To personally inject yourself into any of these negotiations by your own admission, may undermine my ability at a later time to argue among other things, that although you are a successful business man, you were not involved in the day to day negotiations surrounding the complicated financial transactions of ATI and its lenders, but instead delegated such responsibility to Ed Stein (who upon information and belief is going to be a prosecution witness) and/or John Lorenz (who upon information and belief is also going to be a prosecution witness). Accordingly, while it may not be obvious to the civil litigators in this case why submitting these Affidavits can be very dangerous, it is painfully obvious to me and that is why I tried to avoid this difficulty by specifically discussing these matters at great length, only to be ignored.

I want to make it absolutely clear that no further Affidavits by you or any other employee and/or corporate official at any of your companies are to be prepared for submission without my prior approval. I want it also understood that no Affidavits are to be filed on your behalf without my prior approval and I do not want a draft of a proposed Affidavit to be sent to me on the day that the filing is due, so that it is impossible for me to spend the time that is required to make a cogent decision. So too are there to be no depositions or Court appearances scheduled for you personally without my prior approval. If you are required to appear at any Court ordered deposition, I want to be consulted so that either me or someone from my office can be present to guide you through that process.

4

# BRAFMAN & ROSS, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE

26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

BENJAMIN BRAFMAN
CHARLES A. ROSS
————
JENNIFER A. LIANG
MELINDA SARAFA
ANDREA ZELLAN

MARK M. BAKER
OF COUNSEL

February 24, 2003

**VIA FEDERAL EXPRESS AND**
**TELEFAX (631) 342-9777**
**PERSONAL & CONFIDENTIAL**
Mr. Mehdi Gabayzadeh
President and Chief Executive Officer
American Paper Corporation
300 Rabro Drive
Hauppauge, New York 11788

**RE: AMERICAN LEASING LLC v. BOISE CASCASE CORPORATION ET AL.**
**COLUMBIA COUNTY CIRCUIT COURT CASE NO. 02-2208**

Dear Mr. Gabayzadeh:

You have been subpoenaed to testify at a Court ordered Deposition in connection with the above-captioned litigation. Said deposition is scheduled to be held in Oregon and must at the direction of the Court, take place on or before March 3, 2003.

From our previous extensive discussions, you have been advised by me that you are presently a "target" of a criminal investigation being conducted by the United States Attorney for the Eastern District of New York. In that investigation, the Government alleges that you committed a variety of serious crimes while working at American Tissue Inc., and in a number of related businesses, investments and/or companies that you serve as a consultant. According to the Assistant United States Attorney in charge of the Eastern District investigation, you are to be named in a multi-count federal indictment that will include charges relating to widespread fraud in connection with a credit line maintained by American Tissue and other charges, which according to the Government relate to the manner in which the Government alleges that you

BRAFMAN & ROSS, P.C.

transfer funds, assets and equipment among various companies which the Government claims you control either directly or indirectly. The Government may also argue that you have violated various restraining orders that have been filed against your assets by either the Bankruptcy Court or other Courts in which one or more of the many litigations that have been filed against you are currently pending.

As a result of the impending Eastern District criminal investigation I have advised you that it would in my judgment be a serious mistake for you to appear at any deposition and give testimony under oath at this time. To do so, under the present circumstances may cause you to incriminate yourself, which of course you cannot otherwise be compelled to do in accordance with the protections afforded by the Fifth Amendment to the United States Constitution. In recent months, in connection with several other pending litigations and legal proceedings you have accepted my advice and asserted your Fifth Amendment privilege against self-incrimination. To the best of my knowledge you have not provided sworn testimony in any proceeding since this firm began representing you in connection with the matters under review.

In connection with the above-captioned Boise Cascade litigation, however, you have decided to testify at the Court Ordered Deposition and answer all questions that relate specifically to the litigation in question. You have concluded that the litigation in question is far too important and that your truthful testimony will substantially support the Plaintiff's claim in that case which in your judgment has enormous merit and involves a substantial sum of money that you believe Plaintiffs are entitled to. You have also explained that in providing truthful testimony in connection with that litigation you will not incriminate yourself, because in your judgment you have not committed any illegal acts that you could be prosecuted for and thus the concern about self-incrimination does not arise. I have attempted to persuade you without success that the course of action you intend to undertake is in my judgment a mistake because you are a target of a criminal investigation and are soon to be named in a widespread indictment charging you with many serious crimes that relate to the manner in which you have conducted business through American Tissue and a number of other corporate entities that the Government has refused to specifically identify.

A lawyer in my position can of course only "advise" his client what course of action to take or what course of conduct to refrain from undertaking. A lawyer is not able to "force" a client to accept that advice. Accordingly, in the event you choose to provide sworn testimony in connection with the Boise Cascade deposition, I wanted to confirm in writing that your decision to testify is **against**

# BRAFMAN & ROSS, P.C.

my advice and in my judgment not consistent with your personal best interest at this time.  You understand that your testimony may be used against you at a later time and may be offered against you in a criminal trial.  This testimony may also be used to uncover other evidence that may "link" you to other information which in turn may also incriminate you.

You have requested that this firm provide you with counsel at the deposition in an effort to restrict the focus of the inquiry and to assist you should you wish to "selectively" invoke your Fifth Amendment privilege against self-incrimination in response to questions that directly relate to the criminal investigation.  I have cautioned you against taking this road because of my concern that it will simply not be possible to determine precisely how a response to any particular question may or may not be used to incriminate you at a later date and because of my further concern that once you answer certain questions, the Court may deem you to have "waived" your Fifth Amendment privilege with respect to a particular issue or area of inquiry.  Nevertheless, because you are determined to proceed against our advice, we agree to provide you with counsel during the deposition in an effort to help you navigate this process and try as best we can to protect your interests despite my strong belief that to try and do so will not be effective.

This letter has been prepared by me in order to document my concern about your decision to testify at the above-referenced deposition and to also document your decision to reject our advice and testify.  Because of the concern your decision presents, I am asking that you apply your signature to this letter as evidence of the fact that you and I have fully discussed these issues and as further evidence that you understand the issues we have discussed and that your decision to testify in connection with the deposition is a voluntary decision on your part made by you after full and careful discussion with counsel.  Accordingly, I am asking you to sign this letter, date it and return it to me by telefax and mail.

I have always attempted to provide you with the best legal advice I can and will  continue to do so in the days and months ahead.  Once you have provided me with a signed copy of this letter I will authorize Jennifer Liang, a Senior Associate at this office who has worked very closely with me on your

**BRAFMAN & ROSS, P.C.**

legal matters to make arrangements to travel to Oregon and appear with you at the scheduled deposition.

Very truly yours,

Benjamin Brafman

_____
MEHDI GABAYZADEH

*03 - 03 - 003*
_____
DATE

cc:    Cassondra Joseph, Esq.

Robert Katzberg, Esq.

Steve Wagner, Esq.



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

# MEMORANDUM
*Pro Se* Office

**To:**      The Honorable Paul A. Crotty, United States District Judge

**From:**    A. Cavale, *Pro Se* Office, x0177

*SCANNED*

**Date:**    December 2, 2010

**Re:**      <u>**Gabayzadeh v. Brafman, et. al.,**</u>   **09 Civ. 4095 (PAC)(JCF)**

        The attached document, which was received by this Office on <u>December 2, 2010</u> has been submitted to the Court for filing.  The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. <u>See</u> Fed. R. Civ. P. 5(d)(2)(B), (4).  Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( X )   No original signature.

(   )   No affirmation of service/proof of service.

(   )   The request is in the form of a letter.

(   )   Other:_____
        _____
        _____

(X)   **ACCEPT FOR FILING**

Comments:
_____
_____
_____
_____
_____

(   )   **RETURN TO *PRO SE* LITIGANT**

_____
United States District Judge

_____
United States Magistrate Judge

Dated: