UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

MEHDI GABAYZADEH,

                Plaintiff,

-against-

BENJAMIN BRAFMAN, et al.,

                Defendants.
------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 11, 2011_____
```

09 Civ. 4095 (PAC) (JCF)

ORDER ADOPTING R&R

HONORABLE PAUL A. CROTTY, United States District Judge:

*Pro se* plaintiff Mehdi Gabayzadeh ("Plaintiff" or "Gabayzadeh") is currently an inmate at Fort Dix Federal Correctional Institution in New Jersey after his 2005 conviction for bank fraud, wire fraud, securities fraud, bankruptcy fraud, perjury, and obstruction of justice. On April 27, 2009, he filed this action against his former attorney Benjamin Brafman, Esq. ("Brafman"), and the law firms Brafman & Ross, P.C. and Brafman & Associates, P.C. (collectively, "Defendants"), alleging fraudulent misrepresentation and false billing. On November 30, 2009, Defendants filed the instant motion to dismiss. On June 18, 2010, Magistrate Judge Francis issued his Report and Recommendation ("R&R") that this Court grant the Defendants' motion to dismiss with prejudice. For the following reasons, the Court adopts Magistrate Judge Francis's R&R in its entirety. Accordingly, Defendants' motion to dismiss is GRANTED and the case is dismissed with prejudice.

**BACKGROUND**

I. **Facts**[1]

Plaintiff was formerly the President and CEO of American Tissue, Inc. ("ATI"), a large paper products corporation. On September 10, 2001, ATI filed for Chapter 11 bankruptcy and, in November 2001, Plaintiff was removed from his leadership positions at ATI. In the year preceding the bankruptcy, Plaintiff engaged in many schemes to defraud LaSalle National Bank Association, ATI's lender, including falsification of records and financial books and creating fictitious invoices.

Eventually, the United States Department of Justice commenced an investigation which led to a grand jury indictment in the United States District Court for the Eastern District of New York. In February 2002, before being formally indicted, Plaintiff hired Brafman to represent him and arranged to have the representation continue post-indictment. After evaluating the government's case, Brafman urged Plaintiff to consider a plea agreement instead of proceeding to trial. Plaintiff refused, however, and subsequently retained a different lawyer, Raymond G. Perini ("Perini"), for trial.

On April 13, 2005, a jury convicted Plaintiff of multiple counts of fraud and conspiracy to commit fraud. Following the conviction, Plaintiff again retained Brafman for representation at sentencing. On September 25, 2006, Plaintiff was sentenced to 15 years in prison, and was ordered to pay over $64 million in restitution to LaSalle National Bank and Wells Fargo Equipment Finance, Inc. Plaintiff's appeal is currently pending in the United States Court of Appeals for the Second Circuit. United States v. Gabayzadeh, No. 06-5466-cr.

---

[1] Unless otherwise noted, all facts are taken from the R&R.

Plaintiff's fee arrangement with Brafman varied throughout the representation. For the pre-indictment stages, Plaintiff agreed to pay Brafman a $100,000 retainer fee, against which he would be charged an hourly rate. Following his indictment, however, Plaintiff requested, and Brafman agreed, to convert the original retainer arrangement to a flat fee of $500,000, which would cover all pre-trial matters. After his conviction, Plaintiff's family arranged to have Brafman represent him at sentencing for a flat fee of $200,000. Plaintiff claims that he has paid Brafman a total of $1,027,085.75.

**II. The First Amended Complaint**

Plaintiff's First Amended Complaint ("FAC") was filed on September 30, 2009. In the FAC, Plaintiff claims that Brafman engaged in fraud by "demanding" that he turn over two $50,000 cash payments on December 9, 2003 and January 9, 2004, respectively, (FAC ¶¶ 50-65), that Brafman committed fraud and "contract fraud" by misrepresenting his professional credentials, (FAC ¶¶ 67-68), and that Brafman was unqualified to represent ATI, a "billion dollar corporation[]." (FAC ¶ 179.) His fraud claims pertaining to Brafman's credentials are based on a single phrase used in Brafman's retainer agreements, which, as Magistrate Judge Francis indicates, Plaintiff recites "[a]lmost like a mantra" — in bold, capitalized, and underlined type — on 37 of the 49 pages of the FAC: "[M]y degree of expertise and experience in handling cases of this nature." (FAC ¶ 132, Ex. 2; R&R 14.) Plaintiff argues that by including the phrase in the retainer agreements, "Brafman 'conceal[ed]' and 'misstate[d]' his experience and deceived [Plaintiff] into believing that he had possessed the skills and knowledge needed to represent him." (R&R 15 (citing FAC ¶ 76).) In addition, Plaintiff claims that Defendants failed to keep adequate time records pursuant to New York Association for Retarded Children, Inc. v. Carey,

711 F.2d 1136 (2d Cir. 1983), and asserts a claim under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001. (FAC ¶10, 25, 35.)

**III. Procedural History**

On November 30, 2009, Defendants moved to dismiss the FAC for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Defendants' claim (1) that Plaintiff does not have standing to bring a claim under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001; (2) that Plaintiff's fraud claims should be dismissed as being insufficiently pled; (3) that Plaintiff's claim under Carey is "facially frivolous;" and (4) that Plaintiff's claim that Brafman's associate Jennifer Liang aided and abetted in the underlying fraud is insufficiently pled.

On March 12, 2010, Plaintiff filed a motion for partial summary judgment. Magistrate Judge Francis has not required that Defendants respond pending the outcome of the instant motion.

**IV. Magistrate Judge Francis's R&R**

*A. Motion to Dismiss Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice. Id. Pleadings of a *pro se* plaintiff, however, are held to a less

4

stringent standard and should be construed liberally "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

B. *Choice of Law*

Plaintiff brings this diversity action pursuant to 28 U.S.C. § 1332(a)(2).[2] A federal court in a diversity action must apply the choice of law rules of the forum state. GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006). Magistrate Judge Francis determined that Plaintiff's claims "sound in tort," and that, in such cases, the New York Court of Appeals employs an "interest analysis" to determine which state's law applies. (R&R 9 (citing GlobalNet, 449 F.3d at 384).) Under this analysis, the district court is required to apply the relevant laws of the jurisdiction with the greatest interest in the litigation. Id.

Magistrate Judge Francis found that "New York has the most significant relationship to — and interest in — this litigation" because the parties negotiated and formed the disputed retainer agreements in New York, and Defendants represented Plaintiff in his criminal proceeding in the Eastern District of New York. (R&R 9.) As a result, Magistrate Judge Francis found that New York law applies to this case. (Id.)

C. *Fraud Claims*
1. New York Law

Proof of fraud under New York law requires the plaintiff to show that "(1) the defendant made a material false representation [or omission], (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff

---

[2] Plaintiff also alleges that there is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq. (FAC ¶¶ 16, 27-32, 34-35). Magistrate Judge Francis held, however, that the Federal Debt Collection Procedures Act only provides a remedy to the United States, not individuals. (R&R 8 n.4 (citing 28 U.S.C. § 3001(a)).) We agree.

suffered damage as a result of such reliance.'" Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2d Cir. 1996). Rule 9(b) of the Federal Rules of Civil Procedure further requires that the circumstances of the fraud be stated with particularity. Fed. R. Civ. P. 9(b). "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

2. Representation of ATI

  Magistrate Judge Francis found that Plaintiff's challenge to Defendants' representation of ATI is meritless for three reasons. (R&R 11.) First, Magistrate Judge Francis found that it is clear from the exhibits submitted with the pleadings that Brafman was hired to represent Plaintiff, not ATI. (Id.) Second, Magistrate Judge Francis noted that Plaintiff brought the action on his own behalf, and thus cannot assert claims on behalf of ATI. (Id.) Finally, Magistrate Judge Francis determined that "even if he were suing on ATI's behalf, [Plaintiff], as an individual, lacks standing to assert a fraud claim on behalf of a corporate entity." (Id. (citing Lauria v. Heffernan, 607 F. Supp. 2d 403, 410 (E.D.N.Y. 2009)).)

3. The Cash Payments

  Plaintiff claims that the two $50,000 cash payments he made to Defendants on December 9, 2003 and January 9, 2004 were products of fraud, claiming that (1) the money was for "trial fee bills," even though Brafman never represented Plaintiff at trial, (FAC ¶¶ 50-58), and (2) that Defendants fraudulently failed to note that the payments were made in cash on the invoice, (FAC ¶¶ 51, 54). Magistrate Judge Francis determined that Plaintiff's assertions do not state a claim

for fraud, noting that, while the invoice portraying these two payments indeed references a $500,000 "trial fee," (FAC, Ex. 1), the amended retention letter dated March 18, 2003 clearly shows that the fee was for trial preparation. (R&R 12.)  The letter states: "In return for representation by this firm from March 18, 2003 up through but not including a trial of this case you have agreed to pay this firm a flat fee [of] $500,000 . . . to cover all proceedings in connection with this case up through but not including a trial." (Amended Retention Letter 1; FAC Ex. 2.)  Magistrate Judge Francis found that the totality of Defendants' various letters and invoices make clear that the "trial fee" language used in the February 2004 invoice was an inadvertent error, which was corrected in subsequent invoices that make explicit reference to the "pre-trial fee." (R&R 12-13.)  Accordingly, Magistrate Judge Francis held that "given more likely explanations, it simply is not plausible that fraud occurred." (Id. 13 (internal quotation marks omitted).)  In addition, Magistrate Judge Francis found that "it is implausible that the defendants' failure to indicate that [Plaintiff's] payments were in cash exhibits fraudulent behavior." (Id.)

4.  Fraudulent Misrepresentation

Plaintiff alleges that Brafman materially misrepresented his professional qualifications in multiple contractual agreements, taking issue with a particular phrase: "[M]y degree of expertise and experience in handling cases of this nature."  The full paragraph reads:

> It is understood that the $100,000.00 retainer, constitutes a minimum fee that this firm requires in matters of this kind, recognizing as I do when setting the minimum fee, the time that will be required, the degree of difficulty of the case, the urgency of the matter, the necessity of declining other work so as to have the time available to properly attend to this matter and my degree of expertise and experience in handling cases of this nature.

(Retention Letter dated February 18, 2002 at 2; Amended Retention Letter dated March 18, 2003 at 2 (emphasis omitted).)

The generalized factors stated (time, degree of difficulty, urgency, preference, expertise, and experience) are no more than Brafman's explanation for charging $100,000 for his services. Magistrate Judge Francis concluded that the "expertise and experience" phrase is simply "puffery." (R&R 15.) "Puffery" is a "generalized or exaggerated statement[] . . . that a reasonable consumer would not interpret . . . as a factual claim upon which he or she could rely." Hubbard v. General Motors Corp., No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (citation and quotation marks omitted). "A characterization of one's qualifications and experience constitutes puffery if it consists of statements of opinion rather than fact." (R&R 16 (citing Sudul v. Computer Outsourcing Services, Inc., 917 F. Supp. 1033, 1044 (S.D.N.Y. 1996).)  As puffery statements cannot form the basis for a fraud claim, Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994), Magistrate Judge Francis found that "my degree of expertise and experience in handling cases of this nature" could not be a basis of Plaintiff's fraud claim. (R&R 16.)

*D. Illegal Billing*

Plaintiff claims that Brafman's failure to maintain contemporaneous time records violated New York Association for Retarded Children, Inc. v. Carey, 711 F.3d 1136 (2d Cir. 1983). Magistrate Judge Francis found the allegation to be unfounded because "there is no requirement under federal or state law that attorneys who are privately retained maintain such records," and because Carey deals only with the calculation of attorneys' fees under a federal fee-shifting statute. (Id.)

*E. Jennifer Liang*

Although Plaintiff ultimately withdrew his claim that Ms. Liang, an associate at Brafman's firm, aided and abetted the alleged fraud, Magistrate Judge Francis held that "she cannot be liable as an aider and abetter when there is no viable underlying claim of fraud." (R&R 18).

*F. Leave to Amend*

Plaintiff requests leave to further amend his complaint. Generally, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). When dismissing a *pro se* complaint, however, a court should generally "grant[] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

Magistrate Judge Francis concluded that Plaintiff has failed to offer a sufficient explanation of the additional information he could submit to save his claims. (R&R 20.) Moreover, he found that granting leave to amend would be especially inappropriate in this case because it appears that Plaintiff has acted in bad faith. (Id.) Perini, the trial attorney, stated in his affidavit that Plaintiff requested him to ask Brafman for an affidavit in support of Plaintiff's motion to set aside his conviction, and if Brafman did so, Plaintiff told Perini that Plaintiff would withdraw the instant lawsuit. (Id. (citing Perini Aff., ¶¶ 4, 5).) Brafman stated that he "could not agree to provide the affidavit because he did not believe that it was true." (Perini Aff. ¶ 6.) Thereafter, Plaintiff's son contacted Perini reiterating the offer, and Brafman again refused. (Id. ¶

9

7.) Accordingly, because "[P]laintiff's attempt to use this lawsuit as leverage over Mr. Brafman in order to obtain false information to aid his criminal appeal clearly demonstrates bad faith," Magistrate Judge Francis recommended dismissing the complaint with prejudice. (R&R 21.)

## **DISCUSSION**

### I. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the recommendations of the magistrate judge, the court is obligated to review the contested issues *de novo*. Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998). The Court, however, "may adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y 2000).

### II. Plaintiff's Objections

Plaintiff's objections restate his claim that Defendants engaged in fraudulent billing procedures, (Obj. 1-4), while also intertwining allegations (1) that Brafman failed to inform him of the government's interest in arranging a meeting to negotiate a plea agreement (id. 3-9); (2) that such failure was due to Brafman's financial interest in prolonging the proceedings given his large hourly rate (id. 3); and (3) that not only was Magistrate Judge Francis's finding of bad faith incorrect, but also that Brafman and Perini had a conflict of interest stemming from their friendship, and that both attempted to sabotage the instant lawsuit as a result, (id. 10-19).

*A. Billing Procedures*

Plaintiff argues that Magistrate Judge Francis "mistakenly and incorrectly bases [his] conclusions on the premise that the parties were . . . governed by a flat fee agreement." (Id. 2.) Rather, Plaintiff claims that the bulk of the events leading to his allegations occurred while he and Brafman operated under an hourly agreement. (Id.) Plaintiff also reiterates his claim that the billing procedures in place at Brafman's firm violated the requirements set forth in New York Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983)..

Plaintiff's policy argument for applying Carey in this case is baseless. Carey does not create a universal record keeping standard; it merely stands for the proposition that "any attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records." Carey, 711 F.2d at 1148. Plaintiff's policy argument for applying the same rule in his case because of the "premium price" he paid for Brafman's services is simply incorrect. Thus, Plaintiff's claim that the bulk of the events complained of occurred under an hourly agreement rather than a flat fee arrangement is of no moment.

*B. Plea Negotiations*

Plaintiff also raises two new factual allegations, neither of which he discussed previously. First, Plaintiff claims that "Brafman failed to advise the plaintiff of an offer of plea negotiations made by the government on or about March 25, 2002." (Obj. 3.) He then alleges that Brafman intentionally withheld such information because he "wanted to continue collecting on his hourly billing at that time." (Id.) These issues are not properly before the Court at this juncture, as the

allegations were not before Magistrate Judge Francis. See, e.g., Forman v. Artuz, 211 F. Supp. 2d 415, 419 n.8 (S.D.N.Y. 2000).

Even if the Court were able to properly consider these allegations, however, the allegations appear to be baseless. Plaintiff principally cites to a memorandum that Liang wrote to Brafman, dated March 26, 2002, recounting a meeting with Assistant United States Attorney John Curran. Plaintiff argues that the phrase "Curran would be interested in speaking to [Plaintiff]" indicates an interest in plea negotiations on the part of AUSA Curran. (Obj. 3.) Curran, however, stated in the letter that he had only been on the case for one month, and that an indictment was not imminent. (Liang letter dated March 26, 2002.) As such, while AUSA Curran clearly desired a meeting with Plaintiff, there is no indication that any plea negotiation was on, or anywhere near, the table.

*C. Bad Faith*

Lastly, Plaintiff challenges the Magistrate Judge Francis's finding of bad faith and his recommended denial of Plaintiffs request to amend his complaint. (Obj. 10.) Plaintiff also alleges that Brafman and Perini had a conflict of interest, (id. 12), and that Brafman intentionally intimidated witnesses associated with this case. (Id. 15-18.) First, Plaintiff's claim of intimidation or witness tampering cannot properly be raised for the first time in his objection to Magistrate Judge Francis's R&R. With respect to Magistrate Judge Francis's denial of Plaintiff's request to amend, Plaintiff has already been afforded one opportunity to amend his complaint and has not put forth any new information that would appear to state a viable claim. Given the factual background of this case, the compelling allegations of bad faith put forth by defendants, and the fact that "it is within the sound discretion of the court whether to grant leave to amend,"

12

John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994), the Court adopts Magistrate Judge Francis's recommendation and denies Plaintiff's request to amend.

## CONCLUSION

The Court has considered Plaintiff's additional objections and finds them to be without merit. Having considered Magistrate Judge Francis's R&R and the accompanying objections, Defendant's motion is GRANTED. Accordingly, the case is dismissed with prejudice. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
       May 11, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies Mailed By Chambers To:

Mehdi Gabayzadeh
Reg. No. 68419-053
P.O.Box 2000
F.C.I. Fort Dix
Fort Dix, NJ 08640